Clinton Henry BERUBE

v.

Peter B. MATOIAN et al.

No. 80–527–Appeal.

Supreme Court of Rhode Island.

July 22, 1983.

---

Thomas L. McDonald & Stephen C. Mackie, Almonte, Lisa & Pisano, Providence, for plaintiff.

Robert L. Kiernan, Law Offices of Hugh L. Moore, Jr., Providence, for defendants.

## OPINION

SHEA, Justice.

The plaintiff, Clinton Henry Berube, appeals from a summary judgment entered in the Superior Court in favor of one of the defendants, Ten Talents, Incorporated (Ten Talents). The complaint alleged that the defendants were jointly and severally liable for injuries the plaintiff sustained when a vehicle struck him while he was crossing Smithfield Avenue in Pawtucket, Rhode Island, on the evening of April 7, 1978. The complaint further stated that defendant, Peter B. Matoian (Matoian), the vehicle operator, was negligent and that at the time of the accident, the vehicle bore a Connecticut dealer-registration plate that was issued to Ten Talents, a Connecticut corporation.[1]

On September 25, 1980 Ten Talents filed a motion for summary judgment, and on October 9, 1980, that motion was heard before a justice of the Superior Court. At the hearing, Matoian testified that he had made a cash purchase of the automobile on April 5, 1978. His testimony was supported by the bill of sale which was admitted into evidence as a full exhibit. Matoian also stated that he had registered the car in his name in the State of Rhode Island on the morning of April 7, 1978, the date of the accident. To buttress this claim, a representative of the Rhode Island Registry of Motor Vehicles appeared at the hearing and produced the 1978 automobile registration of the vehicle involved, which document indicated that as of April 7, 1978, the automobile was registered to Matoian. Finally, Matoian testified that, other than the purchase of this automobile, he had no business dealings or associations with Ten Talents and that on the evening of the accident, he had been driving the automobile for his own pleasure, while returning home from work.

At the conclusion of the hearing, the motion for summary judgment filed in behalf of Ten Talents was granted, and an order to that effect was entered on October 15, 1980.

On appeal, plaintiff claims that the trial justice erred when granting Ten Talents' motion for summary judgment. He specifically cites as error the trial justice's failure to allow him to elicit testimony concerning the relationship between Matoian and Ten Talents prior to the date of the sale of the vehicle.

As we have often stated, summary judgment is a drastic remedy and should be cautiously applied. However, where there is no genuine issue as to any material fact and the moving party is entitled to jugment as a matter of law, summary judgment properly issues. *Saltzman v. Atlantic Realty Co., Inc.,* R.I., 434 A.2d 1343, 1344–45 (1981); *Ardente v. Horan,* 117 R.I. 254, 256–57, 366 A.2d 162, 164 (1976). On appeal, we review the propriety of the summary-judgment order by the same standards as the trial justice, which review includes an examination of the evidence viewed in a light most favorable to the party opposing the motion. *Ardente v. Horan,* 117 R.I. at 257–58, 366 A.2d at 165.

---

1. In July 1979 plaintiff settled his claim against Matoian, and therefore, Matoian is not a party to this litigation.

In the present case, the parties apparently agree on the material facts since plaintiff does not dispute that at the time of the accident the automobile was owned by, and registered to, Matoian. He nevertheless argues that Ten Talents is liable for damages since the vehicle bore the Connecticut dealer-registration plates of Ten Talents at the time of the collision. In support of his position, plaintiff relies on G.L. 1956 (1982 Reenactment) § 31–3–20, which in part states:

"(b) Any manufacturer or dealer may loan a motor vehicle or said plates or both to any person for the purpose of demonstration of a motor vehicle, or when a motor vehicle owned by such person is undergoing repairs, or when such person has purchased a motor vehicle, the registration of which by him is pending, and in any case for not more than twenty (20) days in any year, provided the person operating such loaned motor vehicle or a motor vehicle bearing such loaned number plate shall furnish proof to said dealer or manufacturer that he has liability and property damage insurance which will cover any damage to any person or property caused by the operation of such loaned vehicle for which the operator would have been liable if he had also been the owner; such proof of insurance shall be set forth on a form to be obtained from the registry and such form shall be subject to such conditions as the registry may impose; provided that in the event the person loaned such vehicle shall not have an insurance policy in effect, then any liability or property damage shall be covered by the dealer's insurance policy."

The plaintiff contends that § 31–3–20 makes the owner of dealer plates an "insurer" in instances in which it can be shown that the dealer plates were being used with the permission of the dealer, that the party operating the vehicle with the plates was negligent, and that the damages incurred as a result of the operator's negligence exceed the limit of the operator's insurance policy, if any. He therefore argues that the trial justice's failure to allow him to inquire

about the relationship between Matoian and Ten Talents prior to the vehicle's sale was erroneous. We disagree.

Section 31–3–20 clearly, in certain situations, makes the insurance policy of an automobile dealer, required to be carried under law, secondary to the policy, if any, of the vehicle operator. However, § 31–3–20(b) specifically recites only three instances in which its requirements involving dealer plates are applicable. They include only situations in which dealer plates are lent:

"for the purpose of demonstration of a motor vehicle, or when a motor vehicle owned by such a person is undergoing repairs, or *when such person has purchased a motor vehicle, the registration of which by him is pending,* \* \* \*." (Emphasis added.)

Clearly, Matoian was not using the dealer plates for the purpose of demonstration of the automobile, nor was his car undergoing repairs. The final portion of § 31–3–20(b) only presupposes situations in which the purchaser has not as yet caused that motor vehicle to have been registered in the purchaser's name and, therefore, such registration is in fact still in the name of the dealer.

In the present case, although Matoian had neglected to remove the dealer plates, it is undisputed that at the time of the accident, both ownership and the registration of the vehicle was in the name of Peter Matoian. The automobile's registration therefore was not "pending" within the meaning of the statute. For this reason, the fact pattern of the instant case is beyond the language and applicability of § 31–3–20.

In support of his position, plaintiff also urges this court to examine several New York decisions in which a seller-dealer was found liable for the use of his dealer-registration plates. *See Phoenix Insurance Co. v. Guthiel,* 2 N.Y.2d 584, 161 N.Y.S.2d 874, 141 N.E.2d 909 (1957); *Switzer v. Merchants Mutual Casualty,* 2 N.Y.2d 575, 161 N.Y.S.2d 867, 141 N.E.2d 904 (1957). Our reading of these decisions indicates they are

distinguishable from the instant case, for in both instances the dealers failed to comply with the applicable provisions of the New York Vehicle and Traffic Law regarding the use of the registration plates and so were estopped from denying liability from their use. In the present case, no one alleges that Ten Talents has violated any provision of the motor vehicle laws regarding the use of their vehicle-registration plates. Rather, it is undisputed that at the time of the accident, full ownership and registration were invested in Matoian, who had failed to remove the plates.

In conclusion, the trial justice was correct when he barred counsel from developing testimony regarding the relationship between Ten Talents and Matoian prior to the sale of the vehicle. Since § 31–3–20 is inapplicable to the instant case, testimony of this sort would be irrelevant to the issues present in this case.

For the foregoing reasons, the appeal of the plaintiff is denied and dismissed, the judgment appealed from is affirmed, and the papers of this case are remanded to the Superior Court.