**Frank G. GIULIANO, Jr. et al.**

v.

**Rafael DIAZ et al.**

**No. 97–90–Appeal.**

Supreme Court of Rhode Island.

May 22, 1998.

Kris Macaruso Marotti, Thomas A. Tarro, III, Warwick, for Plaintiffs.

Lauren D. Wilkins, George H. Rinaldi, Providence, for Defendants.

Before LEDERBERG, FLANDERS and GOLDBERG, JJ.

## OPINION

PER CURIAM.

This appeal concerns the statutory immunity provided by G.L.1956 § 31–3–20(c) to automobile dealers who lend vehicles to persons who attach their own automobile-registration plates to the vehicle. The plaintiffs, Frank G. Giuliano, Jr., and John R. Giuliano, appeal from the grant of a motion for summary judgment submitted by two of the defendants, Edward Imondi and Gustino Imondi d.b.a. Continental Auto Sales (Continental). A Superior Court motion justice ruled that there was no just reason for delay and that judgment should enter in accordance with Rule 54(b) of the Superior Court Rules of Civil Procedure in favor of Continental. We ordered the parties to show cause before a three-judge panel of this Court why we should not decide this appeal summarily. None having been shown, we proceed to consider the motion justice's summary judgment without further briefing and argument.

A fatal accident involving a pedestrian and a motor vehicle in August of 1994 served as the catalyst for this dispute. On that date, plaintiffs' decedent, Frank C. Giuliano, was crossing Hartford Avenue in the city of Providence when he was struck by a car operated by defendant Rafael Diaz (Diaz). Mr. Giuliano died at the hospital shortly after the accident. The police cited Diaz, who was uninsured at the time of the accident, for various infractions, including operation of an

unregistered vehicle, misuse of registration plates, and failure to provide proof of insurance.

The plaintiffs filed a wrongful-death action, alleging that Diaz was negligent in his operation of the vehicle and that Continental and a fourth defendant, Anthony Guadagno (Guadagno), as the owners of the vehicle, were negligent in entrusting the vehicle to Diaz. Continental filed a motion for summary judgment and asserted that the vehicle "was not owned, registered, loaned, or insured by Continental." The plaintiffs opposed Continental's summary-judgment motion on the grounds, inter alia, that Continental in fact owned the car both before and after the accident, as evidenced by certain documentary records it submitted in opposition to the motion. Indeed, even the motion justice acknowledged that there appeared to be a genuine factual question concerning the Diaz car's actual ownership:

> "At the time the police investigated the accident and Mr. Diaz produced, when asked for his license and registration, a loan agreement. The loan agreement was for the * * * 20 days to register. It's a temporary registration. Now, the statute permits the dealer to put his dealer's plates on there for 20 days or if you have a prior registered car, the statute permits you to take the prior registration as the dealer, put the prior plates on the car and give you a temporary registration. Obviously what happened in this case was from March until August. Mr. Diaz *or someone acting in concert with him* kept extending the 20 day period so that he wouldn't have to register his car. There was no insurance. The Imondi's [*sic*] said that they had no interest in the car on the day of the accident.
>
> *"There is a great deal of evidence that something was going on between the Imondi's [sic] and the auto body company that occupied the same—a portion of the same business. As plaintiff says in the file, there's a lot going on. There's evidence at one time that this car was purchased probably at an auction by the giver of the car to Diaz. Someone signed that purchase agreement that Continental was*

*buying it.* The plaintiff is making a claim that, really, Imondi and Gaudagno probably were in business together." (Emphasis added.)

Nonetheless, the motion justice determined that even if plaintiffs could prove all the facts they alleged—including that Continental owned the car—they still could not prevail as a matter of law because Diaz's own plates were affixed to the vehicle that supposedly belonged to Continental, thereby shielding it from liability under § 31–3–20(c). Respectfully we disagree.

Section 31–3–20(b) permits automobile dealers like Continental to lend vehicles to customers in three situations: "[1] for the purpose of demonstration of a motor vehicle, or [2] when a motor vehicle owned by the person is undergoing repairs, or [3] when the person has purchased a motor vehicle, the registration of which by him or her is pending." *Id.* Moreover, the dealer's vehicle can only be lent "in any case for not more than twenty (20) days in any year, provided the person operating the loaned motor vehicle or a motor vehicle bearing such loaned number plate shall furnish proof to the dealer or manufacturer that he or she has liability and property damage insurance." *Id.* The dealer may then affix special dealer's plates to the vehicle at which point the customer may legally operate the vehicle upon the highways of the state. However, the dealer remains liable for any damage caused by the vehicle "in the event the person loaned the vehicle shall not have an insurance policy in effect." *Id.*

Section 31–3–20(c) provides that if a dealer lends a vehicle to a customer "under the aforesaid circumstances" set out in subsection (b) and if the customer's own license plates (rather than the dealer's plates) are affixed to the vehicle "the dealer or manufacturer shall be in no way liable" for any damage caused by operation of the vehicle. As the Court stated in *Flanagan v. Pierce Chevrolet, Inc.*, 122 R.I. 596, 410 A.2d 428 (1980):

> "A dealer which lends an automobile in the enumerated situations has two choices: it may lend the vehicle with dealer's plates, or it may affix the license plates belonging

to its customer. If the dealer lends an automobile bearing dealer's plates to an uninsured motorist, the dealer's insurer bears the risk for damage caused by the vehicle's operation. If the dealer affixes the operator's license plates and issues a temporary registration, the dealer is exempted from liability for damages resulting from operation of the vehicle." *Id.* at 600, 410 A.2d at 431; *see also Berube v. Matoian,* 463 A.2d 183 (R.I.1983) (purchaser's registration not pending within the meaning of statute); *Finck v. Aetna Casualty & Surety Co.,* 432 A.2d 680 (R.I.1981) (same facts as *Flanagan* ).

■ We conclude that these statutory provisions place the burden upon an automobile-dealer defendant to show by a preponderance of the evidence that he or she has complied with the conditions set out in the first clause of § 31–3–20(b) and referenced in subsection (c) in order to be entitled to the immunity conferred by § 31–3–20(c). This conclusion flows naturally from the clear and plain language of the statute and accords with the obvious intent of the Legislature in carving out this exception to the liability that would otherwise attach to the vehicle's owner.

■ In this case it was undisputed that Diaz's license plates were on the car at the time of the accident. However, Continental adduced no evidence tending to prove that it had lent the vehicle to Diaz for any of the purposes specified in § 31–3–20(b). Continental also failed to establish that it had obtained proof of insurance from Diaz as required by § 31–3–20(b). On the contrary, Continental disclaims having lent the vehicle to Diaz at any time, alleging instead that it had no ownership interests whatsoever in the vehicle. If Continental is able to prevail on this defense, then it would of course have no need or basis to invoke the immunity bestowed upon qualified automobile dealers by § 31–3–20(c). The question of ownership, however, was one that appeared to be in genuine dispute when the summary-judgment motion was argued. Thus this matter was not a suitable candidate for disposition via a pretrial motion.

## Conclusion

Viewing the facts in the light most favorable to the nonmoving party, we conclude that the motion justice erred when he ruled that Continental was entitled to judgment as a matter of law because of the immunity conferred by § 31–3–20(c) upon automobile dealers. Not only did Continental fail to establish its qualification for this liability exemption but it also disclaimed ever having owned or lent the vehicle that Diaz was driving at the time of the accident. And because the plaintiffs produced some evidence indicating that Continental and/or Guadagno, its alleged business partner, was the owner of the vehicle, summary judgment based upon a resolution of the vehicle's true ownership would not have been appropriate.

Thus we sustain this appeal and vacate the summary judgment in favor of Continental. The papers in this case shall be remanded to the Superior Court for further proceedings consistent with this opinion.

WEISBERGER, C.J., and BOURCIER, J., did not participate.