SUSAN AVEDESIAN *vs.* BUTLER AUTO SALES, INC.
EDWARD AVEDESIAN *vs.* BUTLER AUTO SALES, INC.

MAY 15, 1961.

PRESENT: Condon, C. J., Roberts, Paolino, Powers and Frost, JJ.

6

Roberts, J. These actions of trespass on the case for negligence were brought by a husband and wife to recover damages that arose out of injuries sustained by the plaintiff wife when a motor vehicle being operated by her was in collision with another motor vehicle alleged to be owned by the defendant. The cases were tried together before a justice of the superior court sitting with a jury, which returned verdicts for the plaintiffs, that for plaintiff wife being in the amount of $12,000 and that for the plaintiff husband $3,000. Thereafter the trial justice denied the defendant's motion for a new trial in the case of the plaintiff husband and in the case of the plaintiff wife granted its motion for a new trial on the issue of damages only unless she filed a remittitur of all of the verdict in excess of $7,000. The remittitur was not filed. The defendant has prosecuted a bill of exceptions to this court in each case and has included therein its exceptions to the denial of its motions for a directed verdict and an unconditional new trial and its requests for special findings by the jury as well as certain of

its exceptions to evidentiary rulings and to portions of the charge.

The facts concerning the collision are not in dispute. The plaintiff wife on May 5, 1956 was operating an automobile owned by plaintiff husband along High Service avenue in the town of North Providence. At that time another motor vehicle being operated along that highway in the opposite direction crossed the road and collided head on with the car being operated by plaintiff wife. It is not disputed that the other car was a 1939 model Ford, hereinafter referred to as the 1939 Ford, or that attached thereto was a dealer's plate, so called, bearing the inscription 18 C. It is conceded that 18 is the distinguishing number issued to defendant as a dealer in motor vehicles pursuant to G. L. 1956, §31-3-23 et seq., and that plate 18 C is one of a number of plates issued to defendant thereunder and for the use of which it is responsible under the provisions of G. L. 1956, §31-3-27. The operator of the 1939 Ford which bore said dealer's plate was identified as James Addis O'Reilly, hereinafter referred to as O'Reilly, who is not, it is conceded, an employee of defendant.

Neither is it in dispute that in May 1956 Walter H. Kierce was employed by defendant as a car salesman and at that time was negotiating for the sale of a 1950 Chevrolet owned by defendant to George W. Slade. It further appears that Slade agreed to purchase the Chevrolet and that as a result thereof Kierce delivered the car to Slade's home at about nine o'clock on the evening of May 4. Upon delivering the Chevrolet, Kierce removed the dealer's plates 18 C therefrom and attached them to the 1939 Ford owned by Slade, which he then drove to his own home in North Providence. Mr. Kierce testified that on the following morning, May 5, his wife, using the 1939 Ford with the dealer's plates still attached thereto, drove him to his place of employment at defendant's showrooms and, after leaving him there, continued to use the Ford as she did some

shopping for the family. She then returned to her home where she left the car standing in the driveway. It is not disputed that later that afternoon O'Reilly, who is a step-son of Kierce and makes his home with him, took the car from the driveway and shortly thereafter collided with plaintiff's car.

Mr. Kierce testified that he had taken the 1939 Ford in trade on the purchase price of the Chevrolet sold to Slade on May 4 and that he did so with the intention of deliver-ing it to defendant's used car lot but, because it would be closed at that hour, he drove it home. When his wife drove him to work in the 1939 Ford on the morning of May 5, they had planned that she would use it to do some shop-ping and would call for him at defendant's plant about five o'clock that afternoon when he would leave the 1939 Ford with defendant and return home using a car to which he referred as a "demonstrator." Kierce testified that dealer's plates ordinarily were used by him whenever he had to transport or deliver a car and that he and other salesmen were frequently permitted to use cars with these dealer's plates attached thereto for their personal business. In the course of his testimony he denied that he had taken the 1939 Ford from Slade with the intention of retaining it as his own property or that he had ever stated that he had purchased the 1939 Ford from another motor vehicle dealer.

The defendant's used-car manager, Richard S. Douglas, testified that he had in that capacity approved the trans-action in which a 1950 Chevrolet was sold to Slade and that Kierce had never informed him that Slade wanted to trade his car in the deal. According to Douglas, defendant's em-ployees were never given permission to use cars with deal-er's plates attached thereto for personal matters. He also testified that on May 5, shortly after the accident, Kierce had told him that he owned the 1939 Ford, having pur-chased it from another dealer in motor vehicles.

There is also some documentary evidence in the record which was adduced for the purpose of showing the nature and terms of the transaction under consideration. These included two of defendant's purchase order forms, which vary slightly in the details as to price. On the face of both of these purchase order forms there is a handwritten notation "No Trade." It also appears from the face of one of these order forms that Slade as the purchaser had signed several warranties with reference to a car that was being traded in. Also included in the documentary evidence is an application form on the reverse side of the registration certificate requesting the registry of motor vehicles to transfer the registration from a 1939 Ford to a 1950 Chevrolet, which was executed on May 4 by Mr. Slade. On the face of this application Slade as the applicant stated that he disposed of the 1939 Ford by selling it to defendant. The application form bears some marks by which it appears that some writing thereon had been obliterated. An employee of the registry testified that upon an inquiry made sometime after May 5 she had examined this form and that it then stated thereon that the Ford had been sold to Kierce. It was her testimony that sometime thereafter the form had been changed by the obliteration of the name of Kierce and the insertion of the name of defendant.

We shall consider first the exception of defendant to the denial in each case of its motion for a directed verdict. The defendant contends that these rulings were erroneous because there is in the record no evidence from which the jury would be warranted in finding either that defendant was the owner of the motor vehicle being operated by O'Reilly at the time of the accident or that defendant had consented to its operation by O'Reilly at that time. In other words, defendant is contending that in the state of the evidence here the jury could not properly find either a common-law agency between defendant and the operator or the agency

contemplated in G. L. 1956, §31-31-3. In the state of the evidence here the common-law relation of principal and agent could not be established, but the circumstances are such that liability may be imposed upon defendant by reason of the statutory agency above referred to.

The legislature had recognized the difficulty of establishing the common-law relationship of principal and agent in most of these cases and provided for the statutory agency in order to give more adequate security against financial loss to those injured in motor vehicle accidents where one of the vehicles involved was operated by a person other than the owner. *Hill* v. *Cabral,* 62 R. I. 11. Said §31-31-3 reads in pertinent part: "Whenever any motor vehicle shall be used, operated, or caused to be operated upon any public highway of this state with the consent of the owner * * * thereof, express or implied, the operator thereof, if other than such owner, * * * shall in case of accident be deemed to be the agent of the owner * * *." As defendant contends in the instant cases, this statute is applicable only if the defendant is the owner of the vehicle involved, and because of an alleged absence of any evidence in the record from which the jury could find that defendant did own the motor vehicle here involved, it has moved for a directed verdict in each case.

What then constitutes one an "owner" within the meaning of that word as it is used in the statute? In §31-31-2 an "owner" is defined as one who has legal title to an automobile or a right to immediate possession under a conditional sale or a chattel mortgage. In the pertinent section, §31-31-3, it is provided that the term "owner" shall include any person who shall have "the lawful possession or control of a motor vehicle under a written sale agreement." It is clear that the legislature intended to give to the word "owner" an expanded meaning so as to include therein those who, although they are without legal title to an automobile, do have lawful possession and control thereof, as for ex-

ample the vendee under a conditional sale. It is our view then that the word "owner" as it is used in §31-31-3 is to be given a broad, comprehensive meaning consistent with the purpose of the statute and includes those who by reason of being lawfully in possession of a motor vehicle may give a valid consent to another to use or operate the car.

In *Lennon* v. *L. A. W. Acceptance Corp.*, 48 R. I. 363, this court considered the question whether under a conditional sale of an automobile the vendor or the vendee was the owner within the terms of the prior statute providing for this agency. It concluded that the vendee, being in lawful possession of the car, could give a valid consent to its operation by another and was therefore the owner within the meaning of that term as used in the statute. At page 367 this court said: "The legislature presumably intended to increase the security for injury caused by negligent operation, — not to add uncertain and indefinite burdens to the sale of automobiles." The legal principle involved is aptly stated in *Gasque* v. *Saidman*, D. C., 44 A.2d 537, at page 538, where the court said: "\* \* \* we think the purpose of the statute was to place the liability upon the person in a position immediately to allow or prevent the use of the vehicle and to do so by giving a lawful and effective consent or prohibition to its operation by others."

It is our opinion that if defendant here lawfully came into possession of the 1939 Ford by the act of its salesman when he sold a Chevrolet automobile to George W. Slade on May 4, 1956, it is an owner within §31-31-3. Obviously in the instant cases the question must turn upon whether defendant's salesman did have authority with respect to the transaction of May 4, 1956 to take the 1939 Ford in trade on the Chevrolet and whether in fact he did take possession thereof as defendant's agent. If he took possession of the Ford for defendant and such action was within the scope of his authority, his possession was the possession of his principal.

Our rule concerning the disposition of motions for a directed verdict is well settled. On such motions the trial justice may not weigh the evidence or pass upon the credibility of the witnesses, but he must view the evidence in the record in the light that is most favorable to the adverse party and draw from that evidence every inference favorable to that party. *Kenyon* v. *Murray*, 90 R.I. 423, 159 A.2d 376. Under the rule as it is frequently stated, a trial justice, when determining such a motion, must deny it and submit the case to the jury if on any reasonable view of the evidence the plaintiff could recover. *Quinn* v. *Poole*, 85 R. I. 280.

When we scrutinize the evidence in the record here in the light of that rule, it becomes clear that a jury could reasonably find that Kierce had taken the 1939 Ford into his possession on May 4 as an agent of defendant acting within the scope of his authority. That in such circumstances the possession of Kierce under the statute would be the possession of defendant is too well settled to require any citation of authority. It is our conclusion that it was not error for the trial justice to deny the motions for directed verdicts on the ground that defendant was not an owner within the terms of §31-31-3.

The defendant further contends that the trial justice erred in denying its motions for direction because there is no evidence in the record from which the jury could properly find consent, either express or implied, on the part of defendant to the operation of the Ford by O'Reilly. If we assume without deciding that there is nothing in the evidence from which the jury could find that defendant expressly consented to such operation of the Ford, a jury question nevertheless arises by virtue of the provisions of G. L. 1956, §31-31-4. In our opinion the trial court, acting pursuant thereto, properly denied defendant's motions and submitted the cases to the jury. Said §31-31-4, which relates to the consent contemplated in §31-31-3, provides that

"Evidence that at the time of such accident or collision the motor vehicle was registered in the name of the defendant shall be prima facie evidence that it was being operated with the consent of said defendant, and absence of such consent shall be an affirmative defense to be set up in the answer and proved by the defendant." This court held in *Kent* v. *Draper Soap Co.*, 75 R. I. 30, that evidence that the vehicle was registered in the defendant's name was enough to take the question of consent to the jury.

The defendant denies that this statute is applicable in the instant cases, contending that the Ford was not registered in the name of this defendant at the time of the accident. It does not deny that dealer's plate 18 C issued to it by the registry of motor vehicles was attached to the Ford. Rather it argues that a motor vehicle owned by a dealer and being operated with a dealer's plate attached thereto is not registered within the meaning of the statute. In support of this contention it relies primarily upon the phrasing of the pertinent statute, G. L. 1956, §31-3-20, wherein it is provided that dealers, among others, may operate or move motor vehicles owned by them upon the highways for certain purposes specified in the statute "without registering each such vehicle upon condition that any such vehicle display thereon * * * a special plate or plates issued to such owner * * *." The substance of this contention is that the operative effect of the quoted language is to entirely exempt dealers from the requirements of registration with respect to motor vehicles owned by them.

With this contention we do not agree. The defendant in undertaking to construe this statute has thereby imported ambiguity into otherwise unambiguous legislation. We reiterate that which we have so often said concerning the interpretation of statutes that when the language of a statute is free from ambiguity and expresses a definite and sensible meaning, such meaning will be conclusively presumed to be that which the legislature intended. *Weimar* v. *Newman,*

78 R. I. 221. We do not perceive that the instant statute requires any resort to the canons of construction. When it is read in context with those provisions of the act which provide for the issuance to dealers of a general distinguishing number and special plates bearing such number, the legislative intent becomes obvious. This legislation was intended to make available to dealers the device of a comprehensive registration under which they may lawfully register motor vehicles owned by them at such time as they intend to operate them upon the highways by the simple expedient of attaching thereto one of the special plates issued to them bearing their distinguishing number. The obvious purpose of the legislature was to avoid unreasonably obstructing and burdening dealers in the conduct of their business by requiring them to apply for and receive individual registrations for each car owned by them in the pursuance of their business.

In *Lennon* v. *L. A. W. Acceptance Corp., supra,* this court gave recognition to the purpose of statutes of this character. It clearly considered such statutory provisions as intended to make available to those, among others, who engage in the business of selling and reselling motor vehicles a convenient but effective method for registering such vehicles for lawful use on the highways in the conduct of that business. The legislation offers to such dealers this comprehensive scheme of registration as an alternate to the requirement for the individual registration of motor vehicles, which would be a costly burden thereon. In that case at page 366 this court said: "Neither the seller nor the buyer is required to register the vehicle unless it is used on the public highways. A dealer may register each automobile 'owned or controlled' by him or may, upon application for a general distinguishing mark, secure a certificate of registration for all of such automobiles, which is valid for each until it is sold * * *."

In other words, it is our view that when a dealer in mo-

tor vehicles attaches his dealer's plates, so called, to an automobile owned by him with the intention of operating it on the highways, he thereby registers that automobile in his name and such is a registration within the purview of §31-31-4. In the instant cases there was evidence from which the jury could find that Kierce had authority to attach these dealer's plates to the Ford and, if it so found, then the car was registered in defendant's name and the question of the absence of consent to O'Reilly's operation was for the jury pursuant to the provisions of the statute. In such circumstances it is our opinion that the trial justice did not err in denying defendant's motions for a directed verdict and that defendant's exceptions to such denial must be overruled.

The defendant's liability here, if any, arises by reason of the statutory agency contemplated in said §31-31-3. To establish such liability the jury would be required first to make affirmative findings with respect to two essential ultimate facts. Such facts are whether defendant owned the 1939 Ford and whether it consented to the operation thereof by O'Reilly. A negative finding by the jury as to either of these ultimate facts would in the circumstances of these cases clearly invalidate the general verdicts that the jury returned in favor of plaintiffs. In view of this circumstance we are constrained to direct our attention next to the exceptions of defendant to the denial by the trial court of its requests for special verdicts.

As it appears in the record, these requests were made pursuant to the provisions of G. L. 1956, §9-20-3, which reads in pertinent part: "In any case the court may, and upon request of either party shall, direct the jury to return a special verdict upon any issue submitted to the jury." The effect of this statute has been considered by this court on many occasions. We have held that it is error for a trial justice to refuse upon the request of a party to submit to the jury for special findings any issue that is truly mate-

rial when such findings would upon a review of the evidence therein constitute an effective device for testing the validity of the general verdict. *Connolly* v. *Seitman,* 64 R. I. 29; *Currie* v. *Nathanson,* 57 R. I. 351.

It is true, as plaintiffs argue, that this court has long adhered to the policy of requiring that findings so requested be pertinent to the issues involved in the case and that the requests therefor be so formulated as to clearly be within the contemplation of the statute. In *Connolly* v. *Seitman, supra,* at page 37, this court stated its reason for adhering to such policy as follows: "In our opinion, the statute under consideration is of assistance if resorted to with moderation and applied with sound discretion by both the bench and bar. Otherwise, it may readily degenerate into a means of mystifying and confusing the jury and thus impair the course of orderly procedure in the trial of cases."

This court, however, also recognizes the mandatory character of the statute and has held it to be error for a trial court to refuse such requests when properly made in an appropriate case. Where a party makes such a request for the purpose of ascertaining the finding of the jury as to ultimate facts, which request is so phrased as to make the jury's answer thereto an effective test as to the validity of the general verdict and is formulated with such clarity and accuracy that it will not tend to confuse or mislead the jury, such request should be granted. If such request is denied to the prejudice of the moving party, the denial constitutes reversible error.

The defendant presented the court with six requests for special findings. It is our opinion that two of these, at least, should have been submitted to the jury for special findings thereon. One of these, defendant's request numbered II, asked, in substance, whether the jury found that Kierce had taken the 1939 Ford from Slade in the course of the transaction without the knowledge of defendant; the other, defendant's request numbered IV, asked whether the jury

found that defendant had permitted the dealer's plates issued to it to be attached to the 1939 Ford at the time of the accident when it was being operated by O'Reilly.

These particular requests for special findings, in our opinion, go to two of the vital issues in the cases. The evidence adduced to prove or disprove these issues was in sharp conflict and complicated in its nature. If request numbered II had been submitted and answered, the jury would have revealed therein what determination it made whether Kierce as defendant's agent in the negotiation of the sale to Slade had authority to take a car in trade as a part of that transaction. If the other question had been similarly submitted and answered, the jury would have made clear its conclusion as to whether the evidence adduced by defendant to prove a lack of consent to operation by O'Reilly had been sufficient to overcome the prima facie case of consent that arose out of the registration of the car in defendant's name.

The plaintiffs contend that defendant was not prejudiced in any manner by the denial of these requests for special findings for the reason, as we understand them, that the questions submitted involved issues in the cases that necessarily were answered by the jury in its general verdicts. It may be that in some cases the circumstances are such that the questions sought to be submitted were of necessity answered in the general verdicts returned, and for that reason whatever error inhered in the refusal to submit the questions was not prejudicial to the party presenting the same. In the instant cases it does not necessarily follow, however, that in returning verdicts for plaintiffs the jury found that defendant was the owner of the Ford or that it had failed to adduce evidence sufficient to overcome the prima facie case of consent arising out of the statute. From an examination of the transcript it does not appear that the evidence adduced on either of these issues strongly preponderated in favor of plaintiffs. Neither does it appear that the applicable law was so free of complexity as to be

readily understood by the jury from the charge as given by the court. To the contrary, the applicable law here involved portions of several statutes which the court deemed it necessary to read to the jury verbatim.

In circumstances such as these we cannot say with reasonable certainty that the jury fully evaluated the evidence and understood the applicable law bearing on the issues as to ownership and consent. It follows then that neither can we conclude with reasonable certainty from the verdicts for plaintiffs returned by the jury that it had considered the law and evidence on these issues and found affirmatively thereon.

This court is reluctant to require the parties hereto to undertake to again litigate these cases, but we find the conclusion inescapable that it was error for the trial court to refuse to submit defendant's requests for special findings to the jury and that defendant was prejudiced by that error. It is our opinion that substantial justice may be done between these parties only by the submission of these cases to another jury wherein defendant may again, if it desires, seek special findings for the purpose of testing the validity of a verdict and the requests therefor may be passed upon by the trial justice in the light of this opinion.

The defendant's exception in each case to the refusal by the trial justice to submit to the jury its requests for special findings is sustained, and because we reach this conclusion it will not be necessary for us to consider the remaining exceptions of the defendant.

In each case the defendant's exception to the denial of its motion for a directed verdict is overruled, its exception to the denial of its requests for the second and fourth special findings by the jury is sustained, and each case is remitted to the superior court for a new trial.

*Aram A. Arabian, John K. Najarian,* for plaintiffs.

*Boss, Conlan, Keenan, Bulman & Rice, John T. Keenan,* for defendant.