410 A.2d 428.

JEANNETTE FLANAGAN AND SUSAN GAGNE
*vs.* PIERCE CHEVROLET, INC.

JANUARY 21, 1980.

PRESENT: Bevilacqua, C.J., Kelleher, Doris and Weisberger, JJ.

WEISBERGER, J.    This case arises out of an automobile accident involving the plaintiffs and Richard Silva, who operated an automobile owned by the defendant. The plaintiffs seek reversal of a judgment entered for the defendant after a jury-waived trial.

The facts pertinent to this appeal are undisputed. The defendant undertook the repair of Mr. Silva's automobile. While repairing his vehicle, defendant loaned Mr. Silva a 1960 Buick. Mr. Silva and defendant executed a written agreement setting forth the terms of the loan. As agreed, defendant affixed Mr. Silva's license plates to the borrowed vehicle for the duration of the loan.

While operating the loaned vehicle, Mr. Silva struck a vehicle owned and operated by plaintiff Susan Gagne. Plaintiff Jeannette Flanagan, a passenger in the Gagne automobile, sustained personal injuries as a result of the collision.

The defendant conceded that Mr. Silva drove his vehicle negligently. At the time of the collision, Mr. Silva was uninsured. The only question before us concerns whether defendant is liable for Mr. Silva's negligence.

The Plaintiffs contend that G.L. 1956 (1968 Reenactment) §31-33-6 controls the question of defendant's liability. Section 31-33-6 sets forth generally the circumstances in which an operator of a vehicle is the imputed agent of the owner. In support of their contentions, plaintiffs cite *Avedesian* v. *Butler Auto Sales, Inc.*, 93 R.I. 4, 170 A.2d 604 (1961). In *Avedesian* the plaintiffs sued a car dealer for injuries sustained in an accident with a dealer-owned automobile, driven by an employee of the dealer. Upon the facts of *Avedesian*, we determined that "the defendants' liability here, if any, arises by reason of the statutory agency contemplated in [§31-33-6]."[1] *Id.* at 15, 170 A.2d at 610.

Even if we assume a sufficient similarity of operative facts, plaintiffs misplace their reliance on *Avedesian*. For after we decided *Avedesian*, the General Assembly enacted G.L. 1956 (1968 Reenactment) §31-3-20, as amended by P.L. 1968, ch. 103, §2. Section 31-3-20 addresses specifically the situation in which a dealer loans a vehicle to replace one being repaired. Section 31-3-20 provides in its second and third paragraphs:

> "*Any manufacturer or dealer may loan a motor vehicle or said plates or both to any person for the purpose of demonstration of a motor vehicle, or when a motor vehicle owned by such person is undergoing repairs, or when such person has purchased a motor vehicle, the registration of which by him is pending,* and in any case for not more than twenty (20) days in any year, provided the person operating such loaned motor vehicle or a motor vehicle bearing such loaned number plate shall furnish proof to said dealer or manufacturer that he has liability and property damage insurance which will cover any damage to any person or property caused by the operation of such loaned vehicle for which the oper-

---

[1] In *Avedesian* v. *Butler Auto Sales, Inc.*, 93 R.I. 4, 170 A.2d 604 (1961), we discussed the predecessor of G.L. 1956 (1968 Reenactment) §31-33-6, G.L. 1956 §31-31-3. For purposes of this appeal, we need not distinguish between them, as they are identical in all material respects.

ator would have been liable if he had also been the owner; such proof of insurance shall be set forth on a form to be obtained from the registry and such form shall be subject to such conditions as the registry may impose; provided that in the event the person loaned such vehicle shall not have an insurance policy in effect, then any liability or property damage shall be covered by the dealer's insurance policy.

"Any manufacturer or *dealer may also loan a motor vehicle, under the aforesaid circumstances, to which vehicle may be affixed plates belonging to the person operating such loaned motor vehicle* when the number plates would be of the same classification and the dealer may issue a temporary certificate of registration of such vehicle under which certificate such vehicle may be operated upon the public highways for a period of twenty (20) days from the date of issuance. Such certificate shall be issued upon a form to be obtained from the registry and shall be issued under such conditions as the registry may impose. The certificate shall be carried in the vehicle for which it is issued and the operator or person in control of the vehicle shall display such certificate for examination upon demand of any proper officer, and *any damage to any person or property caused by the operation of such loaned vehicle shall be the responsibility of such person and the dealer or manufacturer shall be in no way liable therefor."* (Emphasis added.)

We find the provisions of §31-3-20 dispositive of this appeal.[2]

---

[2]In their briefs the parties discuss the issue of whether §31-33-6 was applicable to this case, since the defendant contends that Richard Silva was a bailee pursuant to the provisions of G.L. 1956 (1968 Reenactment) §31-1-17(f). We believe that the defendant's argument has considerable merit under principles enunciated in *Redding* v. *Picard Motor Sales, Inc.,* 102 R.I. 239, 229 A.2d 762 (1967); *Goulet* v. *Coca-Cola Bottling Co. of Rhode Island,* 83 R.I. 310, 116 A.2d 178 (1955); *Gallo* v. *American Egg Co.,* 76 R.I. 450, 72 A.2d 166 (1950). Nevertheless, we believe that §31-3-20 is the more relevant of the statutory provisions and is sufficiently dispositive of the issues herein raised that it is unnecessary to discuss the effect of §31-33-6.

The facts found at trial indicate that defendant complied with the requirements contained in the second paragraph of §31-3-20. The defendant placed Mr. Silva's license plates on the loaned vehicle and executed the temporary loan agreement. The agreement states on its face, "This agreement must be carried in lieu of a Registration." It therefore served as the temporary certificate of registration required by §31-3-20.[3]

Thus defendant's liability to plaintiffs depends on the intent of the General Assembly as manifested in the second paragraph of §31-3-20. The statute clearly sets forth two distinct circumstances with differing results. A dealer which lends an automobile in the enumerated situations has two choices: it may lend the vehicle with dealer's plates, or it may affix the license plates belonging to its customer. If the dealer lends an automobile bearing dealer's plates to an uninsured motorist, the dealer's insurer bears the risk for damage caused by the vehicle's operation. If the dealer affixes the operator's license plates and issues a temporary registration, the dealer is exempted from liability for damages resulting from operation of the vehicle.

The plaintiffs contend that the words "aforesaid circumstances" incorporate into the third paragraph of §31-3-20 all circumstances described in the second. They assert the language, "provided that in the event the person loaned such vehicle shall not have an insurance policy in effect," describes a circumstance. Their interpretation would shift the risk to the dealer's insurer whenever the dealer lends an automobile to an uninsured motorist.

The reading urged by plaintiffs would require us to ignore the provisions of the third paragraph, which provisions exempt the dealer from liability when it has affixed the cus-

---

[3]Although §31-3-20 requires a dealer to issue a temporary certificate of registration "upon a form to be obtained from the registry," the plaintiffs have not questioned the origins of the form used. We therefore assume it was obtained as directed by §31-3-20.

tomer's license plate. The phrase, "the dealer or the manufacturer shall be in no way liable therefor," conveys a plain and sensible meaning. Incorporation of the uninsured motorist language into the third paragraph would render the entire paragraph meaningless. No distinction would then exist between the operation of a loaned vehicle with the dealer's plates and its operation with the customer's own license plates. The court is not at liberty to ignore the distinction enacted by the Legislature. We are bound to give effect to every word, clause, and sentence in a statute if possible. *Chang* v. *University of Rhode Island,* 118 R.I. 631, 375 A.2d 925 (1977); *St. Clare Home* v. *Donnelly,* 117 R.I. 464, 368 A.2d 1214 (1977).

Viewed in this light, the phrase "aforesaid circumstances" refers only to the circumstances enumerated in the first sentence. One of these circumstances is the loan of a motor vehicle to an individual, "when a motor vehicle owned by such person is undergoing repairs."

The plaintiffs do not dispute that the defendant loaned Mr. Silva its vehicle, while repairing the Silva automobile. As we noted above, the defendant satisfied the requirements of the third paragraph of §31-3-20. The defendant's compliance with these requirements entitles it to full exemption from liability pursuant to §31-3-20.

The appeal, therefore, is denied and dismissed, the judgment appealed from is affirmed, and the case is remitted to the Superior Court.

*William J. Burke, William P. Butler,* for plaintiffs.

*Hinckley, Allen, Salisbury & Parsons, Michael P. DeFanti,* for defendant.