Judith J. OLIVEIRA

v.

Steven A. LOMBARDI et al.

Michael R. Ayers

v.

Joseph A. Tiberi et al.

Nos. 2001–27–Appeal, 2000–273–Appeal.

Supreme Court of Rhode Island.

April 3, 2002.

Raymond Alan LaFazia/Mark J. Faria, Mark Decof/Patrick C. Barry, Providence, for plaintiff.

Joseph C. Salvadore, Thomas R. Bender/James T. Murphy, Providence, for defendant.

Before: LEDERBERG, BOURCIER, FLANDERS, and GOLDBERG, JJ.

## OPINION

FLANDERS, J.

By statute, motor vehicle owners in Rhode Island are subject to vicarious liability for the negligence of drivers who operate the owners' vehicles with their consent. But do these laws apply to motor-vehicle owners who are in the business of financing long-term leases of their vehicles? The plain language of the Motor-Vehicle Code, G.L.1956 § 31–1–17(b), as amended by P.L. 1994, ch. 417 § 1, defines an owner as "[a] person who holds the legal title to a vehicle."[1] Long-term lessors of motor vehicles hold legal title to the "for hire" motor vehicles they lease. The Division of Motor Vehicles (DMV) within the Department of Administration has promulgated regulations that also require long-term lessors to provide proof of their financial responsibility before they engage in the business of leasing or renting these vehicles. Consequently, we hold that long-term lessors are subject to vicarious liability for the negligence of drivers who were operating the vehicle with their permission.

Before we heard argument on the above-captioned two cases, we reserved judgment on whether we would consolidate them in deciding these appeals. After considering the parties' written and oral submissions, we now consolidate both appeals for the purpose of deciding them, but state the facts of each case separately before explaining our reasoning.

## I

### *Oliveira v. Lombardi*

### No. 2001–27–A. (*Oliveira*)

The plaintiff, Judith J. Oliveira (Oliveira), appeals to this Court from a Superior Court summary judgment in favor of defendant, Chase Manhattan Automotive Finance Corporation (Chase or defendant), a long-term lessor of motor vehicles. Oliveira suffered severe injuries in a 1998 automobile accident when a car that Chase owned—and leased to defendant Salvatore Lombardi—collided with the rear end of Oliveira's vehicle. The lessee's son, Steven Lombardi, was driving the car when the accident occurred.

At all times material to this case, Chase was in the business of financing long-term leases of motor vehicles. In exchange for a motor-vehicle dealer's assigning a multi-year lease to it, Chase would buy the vehicle from the dealer, take title to it as the registered owner, step into the dealer's shoes as lessor, and collect the monthly rent payments from the lessee. In granting Chase's motion for summary judgment, the motion justice concluded that the General Assembly did not intend that motor-vehicle financing companies such as Chase would be subject to Rhode Island's vicarious-liability statutes for motor-vehicle owners because these lessors do not take possession and control of the vehicles in question. On appeal, Oliveira argues that the motion justice erred as a matter of law when she ruled that Chase was not subject to the vicarious-liability statutes: namely, (1) G.L.1956 § 31–33–6 "Owner's liability for acts of others" (owner-liability statute)

---

1. Throughout our opinion, we refer to the text of the Motor–Vehicle Code (title 31 of the 1956 General Laws) that was in effect in 1997 and 1998 when the accidents in question occurred. *See* footnote 3, *infra*.

and (2) G.L.1956 § 31–34–4, as amended by P.L.1997, ch. 353, § 1 "Liability of owner for negligence of operator" (lessor-liability statute) (collectively, the vicarious-liability statutes).

According to the motion justice, the Legislature did not intend to hold such an owner and lessor liable for the negligence of motor-vehicle operators in the same manner as, for example, the owners of short-term rental vehicles, because the latter would possess the vehicle and could assert control over it. Based upon this rationale, the motion justice announced that §§ 31–33–6 and 31–34–4 were limited in their scope and application and did not subject the owners and lessors of long-term rental vehicles to vicarious liability. Accordingly, the court granted summary judgment to Chase, dismissed Oliveira's complaint against defendant, and entered judgment in its favor under Rule 54(b) of the Superior Court Rules of Civil Procedure.

## II

### Ayers v. Tiberi

### No. 2000–273–A. (Ayers)

In the second case before us, a motor vehicle driven by defendant, Joseph A. Tiberi (Tiberi) collided on August 11, 1997, with a motorcycle driven by plaintiff Michael R. Ayers (Ayers). The defendant, Joseph Falco (Falco), had leased the car six weeks earlier from defendant Gold Key Lease, Inc. (Gold Key) under a 36 month lease agreement that included an option to purchase the vehicle (the lease agreement). As the lease permitted him to do, Falco

then allowed the driver, Tiberi, to operate this leased vehicle. The lease agreement required Falco to maintain insurance on the vehicle and to name Gold Key as an insured and loss payee on the policy. Nevertheless, according to an affidavit of Deborah Avonts, a legal assistant for Gold Key, on July 25, 1997—one month after the execution of the lease agreement and a few weeks before the accident—Falco's insurance lapsed for lack of payment. At oral argument, Gold Key's lawyer admitted that Gold Key had received notice of this insurance lapse before the accident occurred. The driver, Tiberi, was also uninsured when the accident occurred.

Ayers eventually filed suit in Superior Court against Tiberi and Gold Key, and later added Falco as a defendant. Ayers claimed, *inter alia*, that Gold Key, as the title holder and registered owner of the vehicle driven by Tiberi and leased to Falco, was subject to vicarious liability for his injuries pursuant to §§ 31—33–6 and 31–34–4. After Ayers and Gold Key each moved for summary judgment on the issue of Gold Key's liability, the court (per the same motion justice as in the *Oliveira* case) granted summary judgment in favor of Gold Key and entered a Rule 54(b) judgment in its favor. Ayers' case against Falco and Tiberi remains pending in Superior Court, although neither defendant has yet answered plaintiff's complaint.[2]

### Standard of Review

■ The application and scope of statutory language lies at the heart of this dispute. This appeal, therefore, presents

---

**2.** According to Gold Key, Ayers' insurer, Universal Underwriters Insurance Company (Universal Underwriters), paid to Ayers the sums of $20,000 in compensation for his bodily injury, $4,573.90 for property damage, and $2,500 for loss of consortium claims made on behalf of his minor children. Apparently,

Universal Underwriters now maintains this action against defendants as Ayers' subrogee, pursuant to an assignment agreement signed by Ayers. Because there was no official substitution of the parties, however, we continue to refer to Ayers as the plaintiff/appellant, in conformity with the record in the case.

us with questions of statutory interpretation that we review *de novo. Webster v. Perrotta*, 774 A.2d 68, 75 (R.I.2001) (citing *Rhode Island Depositors Economic Protection Corp. v. Bowen Court Associates*, 763 A.2d 1005, 1007 (R.I.2001)). When construing a statute "our ultimate goal is to give effect to the purpose of the act as intended by the Legislature." *Id.* (citing *Matter of Falstaff Brewing Corp. Re: Narragansett Brewery Fire*, 637 A.2d 1047, 1050 (R.I.1994)). In carrying out our duty as the final arbiter on questions of statutory construction, "[i]t is well settled that when the language of a statute is clear and unambiguous, this Court must interpret the statute literally and must give the words of the statute their plain and ordinary meanings." *Accent Store Design, Inc. v. Marathon House, Inc.*, 674 A.2d 1223, 1226 (R.I.1996). Moreover, in interpreting a legislative enactment, it is incumbent upon us to "determine and effectuate the Legislature's intent and to attribute to the enactment the meaning most consistent with its policies or obvious purposes." *Brennan v. Kirby*, 529 A.2d 633, 637 (R.I.1987).

## Analysis

### The Owner–Liability Statute
### (§ 31–33–6)

We begin our analysis by considering whether the motion justice in these consolidated cases erred as a matter of law when she ruled that § 31–33–6 did not apply to long-term lessors of motor vehicles such as Chase and Gold Key. The injured plaintiffs argue that because the lessors were the owners of the motor vehicles in question when the accidents occurred, they were subject to vicarious liability under § 31–33–6, the owner-liability statute. The lessors respond that they were not the owners of the leased vehicles, as that term is used in the owner-liability statute—despite the fact that they held legal title to the vehicles—because they did not lawfully possess or control the vehicles they leased.

■ When these accidents occurred in 1997 and 1998, § 31–33–6, "Owner's liability for acts of others," provided that:

"Whenever any motor vehicle shall be used, operated, or caused to be operated upon any public highway of this state with the consent of the owner, or lessee, or bailee, thereof, expressed or implied, the driver thereof, if other than the owner, or lessee, or bailee, shall in the case of an accident be deemed to be the agent of the owner, or lessee, or bailee, of the motor vehicle unless the driver shall have furnished proof of financial responsibility in the amount set forth in chapter 32 of this title, prior to the accident; and *for the purposes of this section the term 'owner' shall include any person, firm, copartnership, association, or corporation having the lawful possession or control of a motor vehicle under a written sale agreement.*" [3] (Emphasis added.)

**3.** The parties have called our attention to the fact that the 2000 reenactment of the General Laws "amended" this statute via the law-revision process. Before the 2000 reenactment, however, G.L.1956 § 31–33–6 provided that "the term 'owner' *shall include* ***." (Emphasis added.) But the 2000 reenactment split § 31–33–6 into subsections (a) and (b), with subsection (a) now providing that "'[o]wner' *means*, for the purposes of this section ***." (Emphasis added.) Upon examination of the substantive effect of these changes, it is apparent to us that the Legislature has not amended this statute, despite the fact that, if the statute's revised language were to be given effect, it would substantively change the definition of who constitutes an owner under the statute. In actuality, however, the law revisors apparently rewrote § 31–33–6 in 2000 without obtaining the specific approval of the Legislature and the Governor to do so. This Court has faced this type of

■ In interpreting this language, the motion justice in *Oliveira* concluded that the applicable statutory language—"the term 'owner' shall include ***"—was a limiting definition. Therefore, she reasoned, anyone who was not in lawful possession or control of the vehicle could not be deemed an owner for the purposes of this section. We disagree. The General Assembly's use of the word "include" did not limit the definition of "owner;" on the contrary, it expanded the general definition of "owner" to "include" those who lawfully possess or control a vehicle under a written sale agreement—even if they do not otherwise own the vehicle. *Avedesian v. Butler Auto Sales, Inc.*, 93 R.I. 4, 10, 170 A.2d 604, 607

(1961) (giving "owner" an expanded meaning).

The basic definition of "owner" is set forth in another chapter and section of title 31: namely, § 31-1-17(b). That definition is applicable to all of title 31 via § 31-1-2. At all times material to these cases, § 31-1-17(b) defined "owner" as "[a] person who holds the legal title to a vehicle." [4] In *Avedesian*, we interpreted the term "owner" broadly, "so as to include therein those who, although they are without legal title to an automobile, do have lawful possession and control thereof, as for example the vendee under a conditional sale." *Avedesian*, 93 R.I. at 10–11, 170 A.2d at 607. In our opinion, such an expansion of the traditional definition of the term "own-

purported change in statutory language in connection with previous legislative reenactments of the General Laws. For example, in the 1981 reenactment of the General Laws, the law revisors apparently altered (without obtaining specific legislative approval) a statute addressing the jurisdiction of the Family Court. In passing on the legitimacy of that alteration and "[r]ecognizing that legislation promulgated during the reenactment process is passed only in the sense that legislative formalities are observed, this [C]ourt has devised the rule that *the meaning of a statute modified by a group such as the revision commission and subsequently reenacted is presumed to remain unchanged unless the specific proposed changes have been brought to the Legislature's attention. We have taken such an approach because a body such as a revision commission *** has no authority to change the meaning of the law or to alter its substance in any regard ***." In re Richard P.*, 451 A.2d 274, 276–77 (R.I.1982). (Emphasis added.) Reenactments of the General Laws often involve hundreds of pages of legislation, many of which have been purportedly altered by the law revisors. But if these changes have not (as in this case) been brought to the specific attention of the Legislature in the amending legislation, they cannot be given any substantive effect. Accordingly, this Court will not give effect to substantive changes that alter the meaning of the statute unless the law revisor specifically has called them to the

attention of the Legislature during the revision process by specifically including them in the legislation that accomplishes the revision. *See In re Richard P.*, 451 A.2d at 274–76. Therefore, we hold, in the absence of an explicit amendment by the Legislature, § 31-33-6 means today exactly what it did before the 2000 reenactment, and that no legal significance should be given to the language that altered the substantive definition of "owner" in § 31-33-6.

4. General Laws 1956 § 31-1-17(b) also provides the following alternative definition of owner:

"in the event a vehicle is the subject of an agreement for the conditional sale or lease thereof with the right of purchase upon performance of the conditions stated in the agreement and with an immediate right of possession vested in the conditional vendee or lessee, or in the event a mortgagor of a vehicle is entitled to possession, then such conditional vendee or lessee or mortgagor shall be deemed the owner *for the purposes of chapters 1 – 27, inclusive, of this title.*" (Emphasis added.)

Because the owner-liability statute (and the lessor-liability statute, discussed below) are not contained in chapters 1 – 27 of title 31, but are codified at chapters 33 and 34, respectively, the second sentence in the above definition of "owner" does not apply to these chapters.

er" to include "those *** without legal title" in certain cases was not intended to relieve from vicarious liability those who were included in the traditional definition of the term. Rather, we believe that the statute's comprehensive definition of ownership subjects multiple parties to vicarious liability.

Reading §§ 31–33–6 and 31–1–17(b) together, it is apparent to us that § 31–33–6's "shall include" language was not intended to be restrictive; on the contrary, it expanded the general definition of "owner" set forth in § 31–1–17(b). Over forty years ago, in interpreting the statutory predecessor to § 31–33–6, this Court determined that "the word 'owner' as it is used in § 31–[33–6] is to be given a broad, comprehensive meaning consistent with the purpose of the statute." *Avedesian*, 93 R.I. at 11, 170 A.2d at 607. We concluded that by replacing the common-law agency requirements with the less stringent "statutory agency" of § 31–33–6 and its predecessors, the Legislature intended "to give more adequate security against financial loss to those injured in motor vehicle accidents where one of the vehicles involved was operated by a person other than the owner." *Id.* at 10, 170 A.2d at 607. This accords with what we have recently described as "the manifest purpose" of § 31–33–6: namely, to "ensure that a victim of a car injury has an avenue of recovery," *Dias v. Cinquegrana*, 727 A.2d 198, 199 (R.I.1999), thereby preventing "an innocent victim from having to shoulder the expense of an injury." *Id.* at 200.

The § 31–33–6 definition of "owner," therefore, expanded upon the general § 31–1–17(b) definition of "owner" as any person holding legal title to the vehicle. This expanded definition, however, is limited to the circumstance of a purchaser lawfully possessing a vehicle under a written sale agreement when the purchaser does not yet hold legal title. Therefore, § 31–33–6's expanded definition of "owner" was inapplicable to the long-term-lease situations presented in the cases at bar, which do not involve written sale agreements.[5]

■ Here, the lessees did not possess the cars "pursuant to a written sale agreement" as required by § 31–33–6 for persons in lawful possession or control of vehicles to qualify as owners. Moreover, even if the lessees otherwise could qualify as "owners" of the cars—an issue we do not

5. For this reason, the case of *Lennon v. L.A.W. Acceptance Corporation of Rhode Island*, 48 R.I. 363, 138 A. 215 (1927) is of no help to Chase and Gold Key. *Lennon* involved a conditional sale agreement, not a lease. *Id.* at 364, 138 A. at 215. There, the negligent operator of the vehicle, Cann, purchased the vehicle from an auto dealer under a conditional sale agreement. *Id.* at 364, 138 A. at 215–16. The dealer retained title to the vehicle, and eventually assigned the title to a finance company. *Id.* In this case, however, we are not presented with such a conditional-sale situation. Indeed, the Court in *Lennon* relied on the specific statutory definition of who would be deemed to own a vehicle under a written sale agreement. *Id.* at 365, 138 A. at 216. That definition provided that a motor-vehicle owner was one who "[holds] title to a vehicle *or* having the lawful possession or control of the same under a written sale agreement." *Id.* (quoting P.L.1927, ch. 98, § 1). Given the issue in that case, the Court's analysis necessarily focused on whether, in the case of a written sale agreement, the buyer or the seller was the owner of the vehicle for the purpose of registration. The Court held "[t]he buyer of a motor vehicle under an agreement for sale is entitled to have registration of such vehicle as the owner thereof." *Id.* at 367, 138 A. at 216. Because the Court was not faced with determining whether an owner was vicariously liable for the operator's negligence in a long-term-lease situation, it had no occasion to analyze the definition of "owner" in that context. Thus, the *Lennon* case, contrary to Chase's argument, sheds no light on the proper interpretation of § 31–33–6 in a long-term leasing situation.

reach here—lessors such as Chase and Gold Key also qualified as "owners" under § 31–33–6, because they held legal title to the leased vehicles. In sum, we are of the opinion that the lessors, as legal titleholders and registered owners of the vehicles in question, were "owners" of the vehicles under § 31–33–6, and therefore subject to its vicarious liability provisions.

We next address Gold Key's contention that notwithstanding its status as owner of the motor vehicle involved in the accident, Gold Key is relieved of liability under the statute because it received proof of financial responsibility from Falco when he executed the lease agreement. The motion justice apparently concurred with Gold Key's argument:

"I've always read 31–33–6 to mean that the owner-lessor leasing the car to a particular individual only need [sic] to see proof of financial responsibility from that individual. I have not interpreted 31–33–6 or the legislative intent behind it to mean that the owner-lessor must also step in and demand proof of financial responsibility from the actual driver each time the lessee says, 'Here, mom, take my car.' It seemed to me that, as a practical matter, the legislature could not have intended such a thing."

Although these practical concerns of the motion justice in *Ayers* were not unreasonable, the language of § 31–33–6 is clear: an owner, having consented to the use of its vehicle by another driver, is liable for

the negligence of that driver *"unless the driver* shall have furnished proof of financial responsibility in the amount set forth in chapter 32 of this title, prior to the accident." (Emphasis added.) We have consistently held that "when the language of a statute is clear and unambiguous, this Court must interpret the statute literally and must give the words of the statute their plain and ordinary meanings." *Dart Industries, Inc. v. Clark,* 696 A.2d 306, 310 (R.I.1997) (quoting *Accent Store Design, Inc.,* 674 A.2d at 1226).

In this case, by construing the exemption literally, we also attach to it the meaning most consistent with the underlying purposes and policies of § 31–33–6, namely, "to protect an innocent victim from having to shoulder the expense of an injury." *Dias,* 727 A.2d at 200. Therefore, we hold, for consenting owners such as Chase and Gold Key to protect themselves from liability under § 31–33–6, the authorized *drivers* of the leased vehicles must have provided proof of financial responsibility before the accident occurred. The record provides no indication that the drivers in these consolidated cases did so.[6] Therefore, under the plain language of the statute, Gold Key, as owner and lessor of the motor vehicle in question, is subject to liability for the negligence of the driver Tiberi because the lease allowed him to operate the vehicle, yet Tiberi did not provide any proof of financial responsibility before the accident.

6. In some situations, however, it may be possible for drivers to have furnished proof of their financial responsibility before the accident through another party, such as the lessee; for example, when the lessee is acting as an agent, a relative, or an employer of the driver and the driver is a named insured in the insurance policy furnished by the lessee to the lessor and the lease has listed the driver by name or otherwise authorized him or her to drive the vehicle. Nevertheless, because

this argument was not presented to the motion justice in either one of these consolidated actions and because the lessors are subject to liability in any event under G.L.1956 § 31–34–4 (see *infra*), we have no need to determine whether these drivers may have provided proof of their financial responsibility before the accident via the lessees' insurance policies, or via any other party, acting on the drivers' behalf, providing proof of the drivers' financial responsibility to the lessors.

Because we conclude that a lessor who holds legal title to a vehicle is an owner for purposes of the owner-liability statute, we are of the opinion that the motion justice erred when she ruled that long-term lessors Chase and Gold Key were not the owners of the vehicles for the purposes of § 31–33–6. Moreover, we note that, under the explicit language of that statute, it is irrelevant whether the owner (the person holding title to the vehicle) is a long-term lessor or a short-term rental agency. Such a distinction is simply unwarranted by the clear and unambiguous language of the statute, which we are constrained to apply literally. *Accent Store Design, Inc.,* 674 A.2d at 1226. If Chase and Gold Key believe that the statutory framework should treat long-term lessors differently, then they should present such an argument to the General Assembly. Presently, however, no such distinction exists in the plain language of § 31–33–6.

### Lessor–Liability Statute (§ 31–34–4)

■ We now turn to plaintiffs' argument that the motion justice erred in holding that § 31–34–4 was inapplicable to the case at bar. When the accidents occurred, § 31–34–4, entitled "Liability of owner for negligence of operator," provided in relevant part:

"Any owner of a for hire motor vehicle or truck who has given proof of financial responsibility under this chapter or who in violation of this chapter has failed to give proof of financial responsibility, shall be jointly and severally liable with any person operating the vehicle for any damages caused by the negligence of any person operating the vehicle by or with the permission of the owner. Nothing in this section shall be construed to prevent an owner who has

furnished proof of financial responsibility or any person operating the vehicle from making defense in an action upon the ground of contributory negligence to the extent to which such defense is allowed in other cases. *** The term lessor shall include any entity in the business of renting motor vehicles, pursuant to a written rental agreement." [7]

Chase and Gold Key argue that, as long-term lessors, they were not engaged in the business of renting motor vehicles pursuant to a written rental agreement, and that therefore their motor-vehicle leasing businesses lay outside the reach of this lessor-liability statute. But the short answer to this argument is that the terms "owner" and "lessor" in § 31–34–4 are not limited to entities in the business of renting motor vehicles; rather, they "include" such entities. Moreover, per § 31–1–17(b), the term "owner" also includes any person who holds legal title to the vehicle. Further, the relevant case law, *see Broadway Auto Sales, Inc. v. Asselin,* 93 R.I. 403, 176 A.2d 714 (1961), indicates that the terms "rent" and "lease" (or variations thereof) are used interchangeably in various sections of the Motor–Vehicle Code. Thus, for example, the language of § 31–34–4 is immediately preceded by a statement that a *lessor* shall include an entity engaged in the business of *renting* motor vehicles. *See also* §§ 31–34–3 and 31–34–7(c); *LaFratta v. Rhode Island Public Transit Authority,* 751 A.2d 1281, 1283 (R.I.2000); *Spratt v. Forbes,* 705 A.2d 991 (R.I.1997) (mem.) (all using the terms "rent" and "lease" interchangeably). In any event, the definition of "lessor" in § 31–34–4 was not intended to be a limiting factor on who would qualify as an "owner of a for hire motor vehicle." On the contrary, the above quoted language appears to *expand*

---

**7.** The 2000 reenactment of the General Laws amended this statute by reorganizing the paragraphs and changing certain other language in the statute. *See* note 3, *supra.*

the definition of lessor to *also* include motor-vehicle rental agencies that lease cars on a short-term basis. Given the interchangeable use of these terms throughout title 31, however, we conclude that the General Assembly did not intend to distinguish between the terms "rent" and "lease" for the purpose of defining who is included within the definition of an "owner of a for hire motor vehicle." [8]

Moreover, the lessor-liability statute clearly and unambiguously provides that "*[a]ny* owner of a for hire motor vehicle *** shall be jointly and severally liable" for a consensual operator's negligence. Section 31–34–4(b). (Emphasis added.) As lessors holding title to the vehicles involved in these accidents, Chase and Gold Key clearly fall within the broad statutory definition of ownership. Section 31–1–3(g) defines a motor vehicle for hire as "[e]very motor vehicle *** used for transporting persons for which compensation in any form is received, or motor vehicles rented for transporting persons either with or without furnishing an operator." This definition applies whenever the term is used in title 31 of the General Laws. *See* § 31–1–2.

On appeal, Chase and Gold Key have suggested that "rented" vehicles do not include "leased" vehicles. We disagree. In *Asselin*, 93 R.I. at 409, 176 A.2d at 718, we held that all motor vehicles that are "*under a rental contract or a lease,* delivered into the possession and control of the *rentee or lessee* for the transportation of persons for a consideration *** are motor vehicles for hire within the purview of § 31–1–3(g)." (Emphases added.) By referring to both rental contracts and leases in *Asselin,* we held that the term "motor vehicle for hire" included both "rentals"—a term used by the petitioner in that case to refer to short-term agreements—and "leasings," the petitioner's term for agreements of a year or more in duration. *Asselin,* 93 R.I. at 405, 176 A.2d at 715. Conceiving no reason why we should revisit this Court's holding in *Asselin,* we are of the opinion that the term "motor vehicle for hire," as used in § 31–1–3(g), and by extension, § 31–34–4, includes vehicles under a long-term lease such as the ones at issue here. As we have already observed, the General Assembly has used the terms "rent" and "lease" and "renter" and "lessee" interchangeably in various sections of the Motor–Vehicle Code. *Compare,* § 31–34–3 ("Whenever the owner of a motor vehicle *rents* to another person a vehicle without a driver, it is unlawful for the *lessee ***,*") *with* G.L.1956 § 31–34.1–1 ("*Rented* in this state means any vehicle if it is picked up by or delivered to *the renter*

---

**8.** Chase also argues that chapter 34, when viewed in its entirety, evinces the Legislature's intent to limit the scope of G.L.1956 § 31–34–4 to short-term car rentals. The primary statutory language that Chase relies upon to support this argument calls for an "automobile rental company" to compute its charges based on a twenty-four hour period, and not on one calendar day. *See* § 31–34–8. *See also* § 31–34–7 (referring to a "car rental agency"). But these quoted terms are not defined in these sections or elsewhere in title 31 and, most importantly, they are not included in § 31–34–4, the lessor-liability statute at issue. We have no occasion, therefore, to pass on whether these terms include long-term lessors within their ambit. Chase also points to other sections of chapter 34 that it asserts apply exclusively to short-term car rental agencies. As noted previously, however, these sections frequently use the terms "rent" and "lease" (or variations thereof) interchangeably. Moreover, even were we to assume, without deciding, that §§ 31–34–7 and 31–34–8 apply solely to short-term car rental companies (such as, for example, Hertz and Avis), that would not mean that § 31–34–4 should be so limited because it does not use the terms "automobile rental company" or "car rental agency" that are found in §§ 31–34–7 and 31–34–8.

in this state"). (Emphases added.) Thus, as this Court held in *Asselin*, it is clear to us that a long-term motor-vehicle lease falls within the broad definition of a motor vehicle "for hire." As owners of motor vehicles for hire, Chase and Gold Key were subject to the vicarious liability provision of § 31–34–4—irrespective of whether they engaged in the business of renting vehicles.

Chase and Gold Key next argue that it is logical to limit application of § 31–34–4 to short-term rental agencies. This Court had the opportunity to address that question in *Asselin* and, more recently, in *DiQuinzio v. Panciera Lease Co.*, 612 A.2d 40 (R.I.1992), yet it declined to adopt such a limiting construction. In noting the broad scope of the definition of a "for hire" vehicle in § 31–1–3, the *Asselin* Court stated as follows:

"[W]e conclude that it was the legislative intent to enact a definitional statute of comprehensive application that would extend to all vehicles used for the transportation of persons for a consideration whether such vehicles, while being so used, remained in the custody and control of the owner thereof or were delivered by the owner thereof into the custody and control of the rentee or lessee. We further conclude that the record reveals that the vehicles owned by the petitioner here are, under a rental contract or a lease, delivered into the possession and control of the rentee or lessee for the transportation of persons for a consideration and that, therefore, they are motor vehicles for hire within the purview of § 31–1–3(g)." *Asselin*, 93 R.I. at 409, 176 A.2d at 717–18.

In *DiQuinzio*, the State of Rhode Island had leased an automobile under a long-term lease agreement. An employee of the state allegedly drove this vehicle in a negligent manner, causing injuries to the plaintiff passenger. Because both the plaintiff, who was also a state employee, and the driver were subject to the exclusive-remedy provision of the workers' compensation law (G.L.1956 § 28–29–20), the Court held that the passenger plaintiff could not maintain the lawsuit against the owner-lessor of the vehicle. *DiQuinzio*, 612 A.2d at 44. The Court also observed, however, that § 31–34–4 applied to an owner/lessor of a for-hire motor vehicle, stating that "the statute imposes a form of vicarious liability on the owner-lessor based on the operator's wrongful conduct *** [t]he degree of care exercised by an owner-lessor in the hiring out of its motor vehicle has no bearing on its liability ***. [Section 31–34–4] allows a person injured by the negligent operation of a for-hire motor vehicle to maintain a direct action against the owner-lessor, presumed to be a well funded pocket." *DiQuinzio*, 612 A.2d at 43. Thus, although *DiQuinzio* ultimately held that the employee plaintiff in that case could not recover because of the exclusivity of the injured employee's workers'—compensation remedy, the Court explicitly stated that § 31–34–4 otherwise allowed injured parties to sue the motor-vehicle's owner and lessor. "In effect the owner-lessor becomes an additional surety for the satisfaction of a negligence claim against the operator."[9] *DiQuinzio*, 612

---

9. In relation to the *Lennon* decision, Chase cites to Florida law to support its position that a court may only hold a person who has possession of the vehicle vicariously liable because of that person's previous ability to limit or restrict the use of the vehicle. The Court in *DiQuinzio*, however, stated that § 31–34–4 "is plainly not aimed at recognizing any distinct duty of care on the part of the owner-lessor. *** An owner-lessor is liable under the statute whether the requisite permission was given after the most elaborate safety precautions were undertaken or was given to a visibly intoxicated person." *Di-*

A.2d at 43. We can fathom no reason why we should revisit this conclusion in the cases at bar.

Both plaintiffs also urge us to consider the applicable DMV regulations concerning automobile leasing, arguing that they further support their position that § 31–34–4 applies to long-term lessors such as Chase and Gold Key. Entitled "Rules and Regulations Regarding Motor Vehicle Leasing License," the regulations offer yet more evidence of the statute's intended scope.[10] Regulation 3.6 defines "Motor Vehicle Lessor" as:

> "any person or firm engaged in the business of regularly making available, offering to make available, or arranging for another person to use a motor vehicle pursuant to a bailment, lease, or other contractual arrangement under which a charge is made for its use at a periodic rate *for any length of time,* and title to the motor vehicle is in a person or firm other than the user." (Emphasis added.)

Under regulation 4.1, any person engaged in the business of leasing vehicles in Rhode Island first must obtain a license to do so. Both Chase and Gold Key acknowledged that they complied with this regulation and obtained licenses. Regulation 6.1 provides that, once a license is obtained, "[t]he owner of any motor vehicle offered for lease in this state by a motor vehicle lessor shall provide proof of financial responsibility to the Division of Motor Vehicles as required by Section 31–34–1 of the General Laws."

Chase and Gold Key did not dispute that they provided such proof for the vehicles in question. Nevertheless, they argue, § 31–34–1 has no bearing on the scope of § 31–34–4, and thus the regulation is meaningless for the purpose of deciding these appeals. We disagree.

■ The regulations referenced in § 31–34–1 provide owners and lessors of motor vehicles with an indication of the amount of financial responsibility they are required to provide to conduct such a leasing business in this state. Because the DMV is responsible for enforcing title 31, it has the authority to issue such regulations, which are applicable throughout title 31. *See* G.L.1956 § 31–2–3. As we noted in *DiQuinzio,* one purpose of requiring motor-vehicle owners and lessors to obtain a leasing license and to provide proof of their financial responsibility is to ensure that under § 31–34–4 they will prove to be "a well-funded pocket" and "an additional surety for the satisfaction of a negligence claim against the operator." *DiQuinzio,* 612 A.2d at 43. Accordingly, having applied for and obtained licenses under G.L. 1956 chapter 5 of title 31, and having provided proof of their financial responsibility under chapter 34 of title 31, Chase and Gold Key will not now be heard to suggest that they are not subject to § 31–34–4.

■ In *Fratus v. Amerco,* 575 A.2d 989 (R.I.1990), the Federal District Court for

---

*Quinzio v. Panciera Lease Co.,* 612 A.2d 40, 43 (R.I.1992). Therefore, in *DiQuinzio,* the Court rejected Chase's argument that the owner-liability statute only reaches lessees (or short-term car rental agencies) because they are in a position to restrict the drivers of their vehicles to responsible parties.

**10.** Unless otherwise indicated, the regulations cited are the "Rules and Regulations Regarding Motor Vehicle Leasing Licenses" promul-

gated by the Department of Administration, Division of Motor Vehicles (DMV), in the administration of G.L.1956 §§ 31–5–33 and 31–34–1. At the time the regulations were enacted, the DMV was part of the Department of Transportation. *See* P.L.1994, ch. 70, art. 21 and P.L.2000, ch. 109, § 76. The DMV's authority to promulgate regulations concerning those provisions is found in G.L.1956 § 31–2–4.

the District of Rhode Island certified a question to this Court. Although the court framed the question as one involving *rental* vehicles, *Fratus* described the transaction in question as a *lease*. *Id.* at 990. This Court concluded that an out-of-state rental company whose vehicle was not registered or housed in Rhode Island was not required to provide proof of financial responsibility. The Court relied on three sources: § 31–34–1, § 31–34–4, and the regulations now at issue. *Fratus*, 575 A.2d at 990–92. Notably, the Court examined the regulations to determine whether a violation of § 31–34–4 had occurred, 575 A.2d. at 991, stating that "[a] review of the [DMV] regulations is instructive in analyzing this issue. We emphasize that 'this [C]ourt attributes great weight to an agency's construction of a regulatory statute ***.'" *Id.* (quoting *Defenders of Animals, Inc. v. Department of Environmental Management*, 553 A.2d 541, 543 (R.I. 1989)). Although they are not entirely dispositive of the issues before us, the DMV regulations are instructive here concerning what type of entities may be held liable under § 31–34–4. Because the DMV, which is responsible for enforcing title 31, requires long-term lessors of motor vehicles to provide proof of their financial responsibility before leasing motor vehicles in this state, and because we have previously attributed great weight to this agency's construction of this regulatory statute, we believe that the regulation supports our conclusion that Chase and Gold Key are subject to the lessor-liability statute as "an additional surety for the satisfaction of a negligence claim." *DiQuinzio*, 612 A.2d at 43.

Finally, Chase and Gold Key argue that if this Court holds that § 31–34–4 applies to long-term lessors of automobiles, such a holding will detrimentally affect their motor-vehicle financing businesses in Rhode Island. We take no position on the validi-ty or propriety of this claim, but note that the proper forum to revise statutes is the General Assembly, and not this Court.

### Conclusion

We conclude that short-term rental agencies, long-term leasing companies, and motor-vehicle financing corporations are subject to liability under §§ 31–33–6 and 31–34–4 as the owners of motor vehicles under these vicarious-liability statutes. Moreover, Chase and Gold Key were indeed the owners of the motor vehicles involved in these accidents for purposes of both of these statutes. Thus, we sustain Oliveira's and Ayers' appeals, vacate the motion justice's grant of summary judgments in favor of Chase and Gold Key, and remand these cases to the Superior Court for further proceedings consistent with this opinion.

Chief Justice Williams did not participate.