EVERETT A. HILL *vs.* ERMINA CABRAL.

NOVEMBER 26, 1938.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker and Condon, JJ.

12

CAPOTOSTO, J.   This is an action to recover for personal injuries received by the plaintiff shortly after one o'clock on the morning of November 25, 1934, on Bald Hill road in the city of Warwick, which injuries were alleged to have been caused by the negligent operation of defendant's automobile. In the superior court the trial justice, on motion of the defendant at the conclusion of all the testimony, directed a verdict for the defendant. The case is before us on plaintiff's exception to this ruling and on certain other exceptions taken during the trial.

The evidence for the plaintiff shows that his automobile stalled on Bald Hill road, a four-lane highway; that the car was then in the extreme right-hand lane, with its left side slightly over the white line between the first and second lane for traffic moving in the same direction; that all lights on the car were lighted; that when the car stopped, he got out and, taking whatever tools were necessary from the car, he succeeded in starting the engine; and that while he was putting those tools back in their place, standing on the right side of his car, he was suddenly struck by the defendant's automobile as it was driven between where he was standing and the right shoulder of the road. The evidence is uncontradicted that the automobile was registered in the defendant's name with the state division of motor vehicles.

There is no testimony in behalf of the defendant as to how the accident happened. The only ground upon which defendant denies liability is that her son Joseph, who was driving the car at the time of the accident, took the car without her knowledge and against her express refusal to allow him to use it.

Omitting details that are not controlling, the testimony for the defendant on this point is substantially as follows. The defendant testified that she refused to let her son have the automobile because he had no license, and that shortly thereafter she went out, after putting the key of the automobile "in a closet." This was the extent of her direct examina-

tion. Her cross-examination shows that Joseph had frequently used the automobile with her consent up to the time when he had a previous accident in June 1934, which resulted in the revocation of his driver's license; that between 4 and 4:30 p. m. of November 24, 1934, the afternoon preceding the accident in the instant case, Joseph asked for the car and she refused to let him have it, whereupon he left the house but "might have been around there somewhere"; that shortly thereafter she put the key to the car "in the cupboard . . . in the pantry", and, locking the house, she left with her daughter Edith and went to her sister's home, where she stayed until after 9:30 or 10 o'clock of that evening. From this testimony, the defendant asks us to conclude that Joseph must have entered the house while she was out, and, finding the automobile key, took the car without her knowledge or consent.

The defendant's daughter Edith, and her younger son Emanuel, testified that they were present when she refused to let Joseph have the car, although the defendant in her testimony had previously testified that she could not remember whether Emanuel, who was working in Providence, came "that night at six, or worked overtime."

The testimony of Joseph on the question of his mother's refusal to let him have the car is to the same effect. He further testified that, when there was no one home, he found the automobile key "somewhere in the house", and just took the car; that he then picked up a friend, Gerard Cournoyer, and spent the evening with him and two women, and that he was taking Cournoyer back to a C. C. C. camp when the accident happened. This witness admitted that, by reason of the accident, he was convicted on a charge of drunken driving and of operating an automobile without a license.

At the trial the plaintiff attempted to show, in cross-examination of the defendant and of Joseph, that Cournoyer came to the defendant's house on the afternoon of November 24 while the defendant was at home; that he ate there,

and that thereafter Joseph took the car with the defendant's consent. Both witnesses admitted that Cournoyer had been at the house on previous occasions but denied that he had been there on that day. Although Cournoyer was a close friend of Joseph, he did not testify nor was any reason given by the defendant for not calling him as a witness.

The defendant's responsibility under the statute governing this case was narrowed by her evidence to the sole issue of fact as to whether the automobile was operated at the time of the accident with her consent, express or implied. That statute is public laws 1933, chapter 2046, section 1, amending public laws 1929, chapter 1429, sec. 10, amending public laws 1927, chapter 1040, sec. 3. The decisions of this court construing the original statute of 1927 and the amendment of 1929 are not controlling here, as they deal with statutes substantially different from the amendment of 1933, which is now under consideration. The object of all three statutes, however, is the same. From the enactment of the original statute in 1927 the plain intent of the legislature has been to more adequately protect an innocent victim against financial loss following an accident in case a motor vehicle is operated by a person other than the owner.

Public laws 1933, chap. 2046, section 1, which is controlling in this case, is as follows: "Section 1. Section (10) of chapter 1429 of the public laws of 1929 entitled, 'An act concerning the financial responsibility of owners and operators of motor vehicles," is hereby amended to read as follows:

'Sec. 10. Whenever any motor vehicle shall be used, operated, or caused to be operated upon any public highway of this state and an action is begun to recover damages for injuries arising to the person or to the property or for the death of a person, arising out of an accident or collision in which that motor vehicle was involved, evidence that at the time of such accident or collision it was registered in the name of the defendant as owner shall be *prima facie*

evidence that it was then being operated by and under the control of a person for whose conduct the defendant was wholly responsible, and absence of such responsibility shall be an affirmative defence to be set up in the answer and proved by the defendant; and for the purposes of this act the term 'owner' shall include the legal title holder thereof and any person, firm, copartnership, association or corporation having the lawful possession or control of a motor vehicle under a written sale agreement.' "

In enacting chap. 2046, the legislature expressed itself in simple and unequivocal terms. It not only gave proof of the fact that the motor vehicle was registered in the name of the owner the force of *"prima facie* evidence" of the owner's responsibility, but it also put upon the owner of such motor vehicle the burden of proving by an affirmative defense that he was not liable in the circumstances of any particular case. His right of defense under the law remains unimpaired, except that he now must affirmatively prove the defense upon which he relies by competent and sufficient evidence. The only defense interposed by the defendant in this case is that the automobile was operated without her consent, and the burden of proving this defense is put upon her by the statute. No question of agency is involved.

The defendant contends that chap. 2046 raises a mere presumption in favor of the plaintiff, requiring the defendant to go forward with evidence, and that such presumption is overcome and disappears upon the introduction of rebutting evidence. We do not so construe the statute. In the circumstances of this case the effect of the statute is that proof of registration of the automobile in the defendant's name is *prima facie* evidence of her responsibility. The *prima facie* evidence created by the statute raises more than a mere presumption.

It is well established with us that a presumption is not evidence, and for that reason it should not be confused with the term *"prima facie* evidence" in chap. 2046. The charac-

ter of *prima facie* evidence was considered in the case of *Kelly* v. *Jackson,* 6 Peter's 622, where, at page 632 of that opinion by *Story, J.,* the court says: "It" (*prima facie* evidence)" is such as, in judgment of law, is sufficient to establish the fact; and, if not rebutted, remains sufficient for the purpose. The *jury* are bound to consider it in that light, unless they are invested with authority to disregard the rules of evidence, by which the liberty and estate of every citizen are guarded and supported. . . . In a legal sense, then, such *prima facie* evidence in the absence of all controlling evidence, or discrediting circumstances, becomes conclusive of the fact; that is, it should operate upon the minds of the *jury* as decisive to found their verdict as to the fact." (italics ours)

In Wharton's Law Lexicon, (14th ed.) 798, we find the following definition: "Prima facie evidence, that which, not being inconsistent with the falsity of the hypothesis, nevertheless raises such a degree of probability in its favor that it must prevail if it be credited by the *jury,* unless it be rebutted, or the contrary proved." (italics ours) In Words & Phrases may be found many applications of the term as above defined. It therefore seems settled by the great weight of authority that the term *"prima facie* evidence" is not synonymous with presumption.

The defendant relies upon the cases of *Callahan* v. *Weybosset Pure Food Market,* 47 R. I. 361, and *Hartley* v. *Johnson,* 54 R. I. 477, as supporting his contention that chap. 2046 raises a mere presumption in favor of the plaintiff. The *Callahan* case, which was decided in 1926 and therefore prior to the enactment of the original statute which chap. 2046 amends, is based squarely on the common law principles of agency. This decision is not an authority in the instant case.

In the *Hartley* case, decided in 1934, the court also rests its decision on the law of agency. At page 479 of that opinion, the court says: "The question of agency is controlled

by the common law and not by Section 10, Chapter 1429, P. L. 1929, which was amended after the accident—April 26, 1933—and before the trial which was held June 6th and 7th, 1934." The amendment of April 26, 1933 is chap, 2046, now before us. The opinion in the *Hartley* case then states that a statute which simply declares a rule of evidence is not within the rule against retrospective operation and quotes from *both* the statute of 1929 and that of 1933. In a new paragraph immediately following these two quotations, the court, using broad language and without indicating whether it was addressing itself to the statute of 1929, or to that of 1933, or to the question of agency at common law, says: "A *prima facie* case made by proof that the motor vehicle was registered in the name of the defendant as owner is a mere presumption and has force only until rebutted." The cases cited in support of this statement are all cases of agency.

Granting that the language of the opinion in the *Hartley* case is not clear, yet a close reading of it shows that the decisive issue then before the court was whether the operator of the truck was the agent of the defendant at the time of the accident under the common law principles of agency. The statutes of 1929 and 1933 were mentioned only incidentally and generally in connection with such law. It follows that the *Hartley* case has no binding effect in the circumstances of this case, where we are exclusively concerned with chap. 2046.

The sole issue of fact in the instant case is, as already mentioned, whether the automobile was operated at the time of the accident with the defendant's consent, express or implied. The testimony against such consent comes from the defendant and her three children, whose interest in the outcome of the controversy was a matter for consideration. Furthermore, their testimony is open to different inferences and interpretations, depending upon its credibility, and the defense upon which the defendant relies must be affirma-

tively established by her, according to chap. 2046. Taking into account the *prima facie* evidence created by that statute, a question of fact on conflicting evidence was presented in this case, which was for the jury to determine. On a motion for a directed verdict, it was not for the trial justice to weigh the evidence or pass upon the credibility of the witnesses. It is possible that, in some rare and exceptional case, facts may be disclosed in evidence which will prove as a matter of law the defense relied upon, but such is not the case here. Ordinarily, under chap. 2046, it is for the jury to determine the controlling fact in issue upon all the evidence in the case, including what is made *prima facie* evidence by the statute. An almost identical statute was similarly interpreted by the supreme court of Massachusetts. See *Smith* v. *Freedman,* 268 Mass. 38; *Haun* v. *Le Grand,* 268 Mass. 582; *Thomes* v. *Meyer Store Inc.,* 268 Mass. 587. We are therefore of the opinion that it was error to direct a verdict for the defendant in the circumstances of this case.

In view of our conclusion, we do not deem it necessary to consider the plaintiff's other exceptions.

The plaintiff's exception to the direction of a verdict for the defendant is sustained, and the case is remitted to the superior court for a new trial.

*Hartigan, Mullen & Roberts, John E. Mullen, Wilfrid E. McKenna,* for plaintiff.

*Patrick H. Quinn,* for defendant.