JOHN W. KENT *vs.* DRAPER SOAP COMPANY.

JANUARY 14, 1949.

PRESENT: Flynn, C. J., Capotosto, Baker, Condon and O'Connell, JJ.

CAPOTOSTO, J. This action of trespass on the case for negligence was tried to a jury in the superior court and resulted in a verdict of $1050 for the plaintiff. Defendant's motion for a new trial was granted. The case is before us on plaintiff's exception to the granting of such motion and also on defendant's exception to the denial of its motion for a directed verdict.

For the purposes of this case we need not discuss the accident except to say that plaintiff's automobile was hit in the rear and greatly damaged by a truck driven by William G. E. Ware. The truck was admittedly owned by the defendant and registered in its name. The collision occurred shortly after midnight of December 24, 1943 on Summit street, a public highway, near its intersection with Division street in the city of Pawtucket. Road and weather conditions were good.

The controlling question in the case is whether at the time of the accident Ware was operating the truck with the consent, express or implied, of the defendant. It is therefore necessary to refer in some detail to the evidence on this point. In the fall of 1943 Quincy I. Abrams and John Carlson, both of Newton, Massachusetts, acquired all the capital stock of the defendant corporation, then practically inactive. Soon thereafter it resumed operations with about six employees, among whom were William Ware, a young man recently married, and his father Herbert Ware. The former was employed as a general utility man, while the latter, who lived directly across from the plant, served as fireman and watchman. Abrams, who commuted almost daily from Boston, was in charge at the plant. No one was specifically charged with the duty of operating the truck as it was used infrequently.

William Ware testified that he had driven the truck on

four or five errands for the defendant during the morning of December 24, 1943; that when he had completed these he parked the truck in front of his father's house, where it was in plain view of anyone in defendant's office; that he then went into the plant and remained there until about 4:30 o'clock that afternoon, when he told his father and two other employees, Fred Draper and one Sullivan, that he was going to use the truck to transport a bureau from his father's house to his own home, which was about a mile and a half away; and that nobody then told him that he could not take the truck for that purpose. He further testified that in the course of his employment he took his orders, which included the driving of the truck, from his father, or from "Doc," who later was identified as Robert Weiss, the plant's chemist, or from Draper, whose duties as an employee of the defendant are not clear, but not from Sullivan, who was an ordinary worker like himself. "To be truthful," he testified, "everybody was the boss." Ware's father, Draper and Sullivan did not testify.

It is unnecessary to refer to the circumstances following the accident other than to say that on December 27, 1946 Ware was sentenced for driving so as to endanger life, leaving the scene of an accident and driving without a license. We may also mention here that no one in behalf of the defendant ever complained to the police that the truck had been driven away without its consent.

Both Abrams and Carlson, witnesses for the defendant, testified that the former was the manager of the plant and that the latter went there occasionally for business purposes; that they had no driver for the truck as it was rarely used; that no person employed by the defendant was ever permitted to operate the truck without first obtaining permission from either of them if they were at the plant; and that in their absence Weiss, the chemist, alone had authority to grant such permission. Abrams further testified that on the day in question he, Carlson and Weiss were at the plant; that about noontime he and Carlson

gave the employees their pay with a bonus and shortly thereafter left for Boston, at which time the truck was in the garage. Weiss, also called by the defendant, testified that in the absence of Abrams and Carlson the truck could not be operated by any of defendant's employees without his permission; that he was at the plant when Abrams and Carlson left but went home about an hour later as the plant was closing earlier on that day because of Christmas. Each of these three witnesses testified positively that he had not given Ware permission to use the truck on that day.

We will now consider defendant's exception to the denial of its motion for a directed verdict. Under this exception it contends that on any rational view of the evidence the only reasonable conclusion therefrom is that Ware took the truck without the consent, express or implied, of the defendant. We cannot sustain this contention in view of the provisions of public laws 1940, chapter 867, sec. 10, upon which the plaintiff relies, and of the conflicting evidence which depends largely upon credibility in order to determine its weight on the question of consent.

The pertinent part of sec. 10 is as follows: "Whenever any motor vehicle shall be used, operated, or caused to be operated upon any public highway of this state with the consent of the owner, or lessee, or bailee, thereof, expressed or implied, the operator thereof, if other than such owner, or lessee, or bailee, shall in case of accident, be deemed to be the agent of the owner or lessee, or bailee, of such motor vehicle * * *. Evidence that at the time of such accident or collision the motor vehicle was registered in the name of the defendant shall be prima facie evidence that it was being operated with the consent of said defendant, and absence of such consent shall be an affirmative defence to be set up in the answer and proved by the defendant."

Both provisions constitute important remedial legislation and were obviously intended to do away with the

difficulty which, under the law as it stood prior to the original enactment of the statute, was often encountered by injured persons in trying to make formal proof that the driver of the vehicle was operating it at the time of the accident as the agent of the owner. *Colwell* v. *Aetna Bottle & Stopper Co.,* 33 R. I. 531; *Landry* v. *Richmond,* 45 R. I. 504. Whether the operator had the consent of the owner would ordinarily be unknown to the plaintiff and often very difficult of ascertainment by him, as the evidence on that point would normally be in the control of the defendant. When the statute was enacted in its present form in 1940 the legislature evidently believed that greater justice would be done in this class of cases by eliminating the ordinary defenses under the law of agency and placing the burden of proof of consent upon the owner of a motor vehicle registered in his name if he saw fit to permit another, not his lessee or bailee, to operate such vehicle with his consent on a public highway.

The history of the statute before its amendment in 1940 was outlined first in *Gemma* v. *Rotondo,* 62 R. I. 293, and after such amendment, in *Baker* v. *Rhode Island Ice Co.,* 72 R. I. 262. An amplification of that outline with a citation of pertinent cases under the statute as it varied from time to time may be of assistance. The statute first appeared as P. L. 1927, chap. 1040, sec. 3. It then provided broadly that a driver operating a motor vehicle with the owner's consent was deemed his agent. *Guerin* v. *Mongeon,* 49 R. I. 414; *Kernan* v. *Webb,* 50 R. I. 394. The scope of this provision was later limited by P. L. 1929, chap. 1429, sec. 10. *Ford* v. *Dorcus,* 54 R. I. 1; *Massart* v. *Narragansett Electric Co.,* 54 R. I. 154; *Emond* v. *Fallon,* 56 R. I. 419. By P. L. 1933, chap. 2046, sec. 10, the provision as to agency just above mentioned was deleted from the statute and in its stead it was provided that registration of a motor vehicle in the name of the owner was prima facie evidence of consent and, further, that the absence of such consent was thereafter an affirmative defense to

be proved by the owner. *Hill* v. *Cabral*, 62 R. I. 11; *Gemma* v. *Rotondo, supra; Conant* v. *Giddings*, 65 R. I. 79; *Hill* v. *Cabral*, 66 R. I. 145. The statute as amended by P. L. 1940, chap. 867, sec. 10, which applies in the instant case, reenacted the provision that had been repealed in 1933 and otherwise continued in force the statute of that year, thus combining in that one section both provisions heretofore mentioned. *Baker* v. *Rhode Island Ice Co., supra.*

The different provisions in the present statute have been fully construed in the above-cited cases. Two very definite results appear from the opinions therein. First, if the owner of a motor vehicle registered in his name permits another, not his lessee or bailee, to operate such vehicle with his consent upon a public highway the operator of such vehicle, in the case of accident, shall be considered as the agent of the owner, irrespective of the rules of agency at common law. In *Kernan* v. *Webb, supra*, where the law contained one of the same provisions as in the present statute, this court said at page 398: "If, at the time of the accident, the operator is in fact an agent of the owner, the latter is liable at common law. The statute is intended to be operative and to impose a liability when there is an accident and there is no existing agency." In *Guerin* v. *Mongeon, supra*, at pages 416 and 417, the court expressed itself as follows: "If the owner's consent, either express or implied, is proved, it is no longer a defence in case of accident that the servant or agent to whom the use or operation of the vehicle has been intrusted has temporarily departed from the course of his employment or the scope of his agency."

The second result from the construction adopted in the aforementioned cases is that since the statute makes proof of registration in the name of the owner prima facie evidence of his consent, that evidence cannot be treated as a mere presumption which disappears upon the introduction of competent evidence to the contrary. *Hill* v. *Cabral*, 62 R. I. 11; *Gemma* v. *Rotondo, supra*. Such prima facie evidence remains in the case throughout the trial and is

entitled to be weighed like any other evidence upon the question of fact as to consent. When the prima facie evidence thus created by the statute is not in any way met, a verdict or finding if otherwise proper is required in accordance with its effect. If there is evidence to the contrary there is then a question of fact for the jury as to whether the prima facie evidence has been overcome by the affirmative defense.

We observe here, as we did in the *Gemma* case, that rarely under this statute can it be ruled as a matter of law that an affirmative defense has been made out or that a prima facie case under the statute has been overcome. This is especially true when the proof rests upon oral testimony introduced by the party upon whom the burden rests and upon inferences from the surrounding circumstances. *McDonough* v. *Metropolitan Life Ins. Co.*, 228 Mass. 450, 452. Except in some rare and unusual circumstances, the credibility of the witnesses and the weight of the evidence are in the first instance for the consideration of the trier of the facts.

It is clear that both provisions of the statute apply in the instant case and that the plaintiff is entitled to the benefits thereof. The defendant derives no advantage from the fact that Ware was using the truck for his own purposes, as the statute in case of accident makes him the defendant's agent provided he was driving the truck with the latter's consent, express or implied. In other words, in such a case the operator of the motor vehicle is the statutory agent of the owner.

The determinative question in this case is whether Ware was in fact operating the truck with defendant's consent. On that issue, in addition to the prima facie evidence created by the statute, there was also some testimony from Ware that he was operating the truck with the actual consent of the defendant through one or more of its authorized agents. Notwithstanding this the defendant argues that on all the evidence, especially that of Abrams, Carlson

38

and Weiss, the instant case is one of those rare instances when the trial justice should have directed a verdict for the defendant, as its consent, express or implied, was completely disproved upon any rational view of the evidence.

We have already indicated that we cannot follow this contention. Defendant's interpretation of the evidence involves a disregard of the plain language of the statute and it would also permit a trial' justice on a motion for a directed verdict to pass on the credibility of the witnesses and the weight of the evidence, which he cannot do under our well-settled practice. Furthermore, in considering such a motion the trial justice is bound to view the evidence most favorably to the adverse party. In the circumstances of this case we are of the opinion that there was no error in denying defendant's motion for a directed verdict and its exception thereto is overruled.

The only other question before us is raised by the plaintiff's exception to the granting of defendant's motion for a new trial. The situation that confronts a trial justice on such a motion is quite different from the one raised on a motion for a directed verdict. It is equally well settled that on a motion for a new trial the proper discharge of the duty imposed upon a trial justice requires him to pass his independent judgment upon the credibility of the witnesses and the weight of the evidence. In the instant case it clearly appears in his decision from the bench that the trial justice followed the correct rule in. passing on defendant's motion for a new trial. It was his judgment upon his consideration of the evidence that the verdict for the plaintiff and the special finding that Ware was operating the truck with defendant's consent were influenced by a sympathetic attitude on the part of the jury towards the plaintiff, who made a "favorable impression" and was "an innocent victim of this accident." Referring directly to the question of consent the trial justice plainly stated that the finding that Ware was operating the truck with

defendant's consent not only was without support in the evidence but in clear disregard thereof.

The trial justice who had the advantage of observing the witnesses while testifying passed on their credibility and the weight of the evidence. From our consideration of the evidence we are unable to say that he was clearly wrong in granting defendant's motion for a new trial. Plaintiff's exception is therefore overruled.

The plaintiff's and the defendant's exceptions are overruled, and the case is remitted to the superior court for a new trial.

*Carroll & Dwyer, Edward F. J. Dwyer,* for plaintiff.

*Frederick W. O'Connell, Swan, Keeney & Smith,* for defendant.