Argelis Pichardo                    :

v.                    :

Julie Stevens et al.                    :

NOTICE: This opinion is subject to formal revision before publication in the Rhode Island Reporter. Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone 222-3258 of any typographical or other formal errors in order that corrections may be made before the opinion is published.

Argelis Pichardo                    :

v.                                  :

Julie Stevens et al.                :

Present:  Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

**O P I N I O N**

**Justice Robinson, for the Court.**  The plaintiff, Argelis Pichardo, appeals from the entry

of summary judgment in favor of the defendant, Julie Stevens.

This case came before the Supreme Court for oral argument pursuant to an order

directing the parties to show cause why the issues raised in this appeal should not be summarily

decided.  After considering the record, the memoranda submitted to this Court on behalf of the

parties, and the oral arguments of counsel, we are of the opinion that cause has not been shown

and that the appeal may be resolved without further briefing or argument.  For the reasons set

forth in this opinion, we reverse the Superior Court's grant of summary judgment.

**I**

**Facts and Travel**

**A**

**The Collision of October 19, 2007**

A police report attached as an exhibit to the memorandum in support of Ms. Stevens's

motion for summary judgment (the Accident Report) sets forth details relative to an automobile

collision that gave rise to the underlying lawsuit; we proceed now to summarize those details in pertinent part. On October 19, 2007, a 1996 Toyota Camry registered to Ms. Stevens (the Camry) struck a car that was parked at 14 Warrington Street in Providence. The parked car was registered to Mr. Pichardo. One of Mr. Pichardo's co-workers saw the incident and flagged down a police officer. The witness told the police officer that he followed the Camry to Early Street after it left the scene of the collision. The witness saw "a black male wearing blue jeans and a dark sweatshirt exit the vehicle and possibly enter" a house at 152 Early Street. After speaking with the witness, the police officer knocked on the front door. No one answered. The police then had the Camry towed from the scene and "a hold was * * * placed on the [Camry] for the registered owner," Ms. Stevens. Neither party has contested the accuracy of the Accident Report.

**B**

**The Litigation[1]**

On January 6, 2010, Mr. Pichardo filed a complaint in Superior Court against Ms. Stevens seeking damages pursuant to G.L. 1956 §§ 31-33-6 and 31-33-7. The former of the two just-referenced statutes provides that a vehicle owner may be liable for the acts of another person who operates the owner's car "with the consent of the owner." Section 31-33-6. The latter statute provides (1) that evidence that the defendant was the registered owner of a car involved in an accident or collision "shall be prima facie evidence" of the defendant-owner's consent and (2) that "the absence of consent shall be an affirmative defense to be set up in the answer and proved by the defendant." Section 31-33-7. Ms. Stevens raised such an affirmative defense in her answer to Mr. Pichardo's complaint.

---

[1]     For the sake of narrative clarity, we have deliberately placed our description of the litigation of this case at an early point in this "Facts and Travel" section.

On December 16, 2010, Ms. Stevens filed a motion for summary judgment; in the memorandum that accompanied her motion, Ms. Stevens contended that "the driver was operating the [Camry] without [her] consent" at the time of the collision. Ms. Stevens's memorandum stated that, after her insurance company notified her of the collision, she "realized that her vehicle was no longer in the possession of the friend with whom she had left it." Attached to her memorandum, Ms. Stevens submitted, inter alia, her affidavit (the Affidavit) and a copy of a stolen vehicle report that she filed with the police in Taunton, Massachusetts, on October 27, 2007 (the Stolen Vehicle Report). In her Affidavit, Ms. Stevens averred: (1) that on the day of the collision, she had boarded a flight for West Palm Beach, Florida, at 7:45 a.m.; (2) that the Camry, which she admittedly owned, "was a stolen vehicle;" and (3) "that the unidentified driver described in the [Accident Report] * * * did not have [her] consent to operate [the Camry]." The memorandum filed in support of Ms. Stevens's motion for summary judgment argued that, "[i]n light of [the Affidavit] and the [Stolen Vehicle Report], there can be no genuine dispute that the driver was operating the vehicle without the consent of Ms. Stevens at the time of the accident, thus relieving Ms. Stevens of any liability for the driver's actions." In addition to the Affidavit and the Stolen Vehicle Report, Ms. Stevens also submitted to the court a police record of her visit to the Taunton Police Department (the Incident Report), the previously referenced Accident Report, and an e-mail from Southwest Airlines confirming Ms. Stevens's trip to Florida on October 19, 2007 at 7:45 a.m.

Mr. Pichardo filed an objection to Ms. Stevens's motion for summary judgment, and he requested that the court continue the scheduled hearing on Ms. Stevens's motion so that he could take Ms. Stevens's deposition. Mr. Pichardo's counsel then deposed Ms. Stevens on March 21, 2011. The motion justice ultimately granted Ms. Stevens's motion for summary judgment at the

conclusion of an April 26, 2011 hearing; she ruled that "the car was stolen, and * * * [Ms. Stevens] did not give permission for anyone to drive the vehicle."

## C

### The Deposition

As previously indicated, counsel for Mr. Pichardo took Ms. Stevens's deposition on March 21, 2011. The following paragraphs summarize the relevant portions of Ms. Stevens's testimony at that deposition.

Ms. Stevens testified that, at 4:30 p.m. on Thursday, October 18, 2007 (the day before the collision), she drove the Camry in order to go fishing with her daughter in Taunton. Upon arriving in the vicinity of the pond that was their destination, she left the car in a parking lot. When they were done fishing, Ms. Stevens and her daughter returned to the parking lot, but they discovered that the Camry was missing. Ms. Stevens testified that she did not call the police because she thought that her husband (from whom she had recently separated) may have taken the Camry without telling her. However, Ms. Stevens also acknowledged during her deposition: (1) that her husband did not have a key to the Camry on the day when she said the car was taken; (2) that at no time in the past had he taken the car without her permission; and (3) that, although she had told her husband that she was taking their daughter fishing, she had not told him where they were going. Ms. Stevens further testified that there was only one key to the Camry and that she had that key in her possession while she was fishing.

Ms. Stevens further testified that, instead of calling the police, she phoned a friend to pick up her and her daughter at the parking lot. Ms. Stevens stated that, when she returned home that evening, she called her husband to ask whether he had taken the Camry. He told her that he did not have the car. Again, Ms. Stevens did not call the police to report her missing Camry.

Ms. Stevens also testified that, on October 19 (the day after the fishing trip and the day of the collision), she took a 7:45 a.m. flight from Providence in order to visit relatives in Florida. Ms. Stevens stated that she returned from her trip to Florida three days later (i.e., October 22). Greeting her at the door was a note stating that the post office was holding a certified letter for her. She retrieved the letter "days later;" it was from a garage in Providence that had her Camry. Ms. Stevens testified that, once she received the certified letter, she "immediately" contacted the owner of the garage, who told her that her car had been towed following an accident. The garage owner also advised Ms. Stevens that "there was a hold on [her Camry]" and that she needed to contact the police before she could pick it up. Ms. Stevens testified that this phone call was the first time she had heard of the collision. Although the Camry was damaged in the collision, Ms. Stevens testified that she did not remember anyone at the garage or anyone from her insurance company having mentioned that there was evidence of tampering with the ignition or damage to the steering column.

Eventually, on October 27, 2007, Ms. Stevens contacted the police in Taunton about her missing Camry.

## D

### The Police Report

As noted, on October 27, 2007, Ms. Stevens went to the Taunton Police Department to report her Camry as stolen. She made this initial contact with police nine days after the alleged theft took place and five days after she returned from her trip to Florida. In the Stolen Vehicle Report, Ms. Stevens filled out a section in which she indicated that the Camry had been stolen since 10 a.m. on October 18, 2007—the same day that Ms. Stevens testified that she took the Camry to go fishing at 4:30 p.m. Ms. Stevens signed this section of the Stolen Vehicle Report

under penalty of perjury.  Conversely, the Incident Report prepared by the Taunton police—a summary of Ms. Stevens's visit to the police station on October 27—notes that Ms. Stevens told the police that she "JUST RETURNEED [sic] HOME FROM FLORIDA AND RECEIVED A CERTIFIED LETTER THAT THEY HAD HER CAR WHICH SHE LEFT AT A FRIENDS [sic] HOME WHEN SHE LEFT LAST FRIDAY 10/19."  (Block capital letters in original.)

## II

## Issue on Appeal

On appeal, Mr. Pichardo contends that inconsistencies in the evidence create genuine issues of material fact as to whether or not Ms. Stevens gave the unidentified driver consent to use her Camry on October 19, 2007.  For that reason, he argues that summary judgment was incorrectly granted in Ms. Stevens's favor.

## III

## Standard of Review

We review the granting of a motion for summary judgment in a de novo manner.  Hazard v. East Hills, Inc., 45 A.3d 1262, 1268 (R.I. 2012).  We apply the same standards and rules as did the motion justice.  Generation Realty, LLC v. Catanzaro, 21 A.3d 253, 258 (R.I. 2011).  We have often reiterated the principle that "[s]ummary judgment is appropriate when, viewing the facts and all reasonable inferences therefrom in the light most favorable to the nonmoving party, the court determines that there are no issues of material fact in dispute, and the moving party is entitled to judgment as a matter of law."  Delta Airlines, Inc. v. Neary, 785 A.2d 1123, 1126 (R.I. 2001).

However, we are ever mindful that "[s]ummary judgment is a drastic remedy, and a motion for summary judgment should be dealt with cautiously."  Estate of Giuliano v. Giuliano,

949 A.2d 386, 390 (R.I. 2008) (internal quotation marks omitted); see also Gardner v. Baird, 871 A.2d 949, 952 (R.I. 2005) ("[S]ummary judgment is an extreme remedy that warrants cautious application."); DePasquale v. Venus Pizza, Inc., 727 A.2d 683, 685 (R.I. 1999) ("This Court has consistently acknowledged that summary judgment is a harsh remedy that must be applied cautiously."). It is well established that, "[w]hen a genuine issue of fact exists, * * * the trial justice must not decide the issue." Gliottone v. Ethier, 870 A.2d 1022, 1027 (R.I. 2005) (internal quotation marks omitted). Further, the motion justice "must refrain from weighing the evidence or passing upon issues of credibility." Doe v. Gelineau, 732 A.2d 43, 48 (R.I. 1999). Ultimately, the "purpose of the summary judgment procedure is issue finding, not issue determination." Estate of Giuliano, 949 A.2d at 391 (internal quotation marks omitted); see also Steinberg v. State, 427 A.2d 338, 340 (R.I. 1981) ("[I]n ruling on a motion for summary judgment, the trial justice must look for the factual issues, not determine them.").

## IV

### Analysis

The critical issue in this case is whether or not the evidence presented to the motion justice created an issue of material fact as to whether the unidentified driver had Ms. Stevens's consent to drive the Camry at the time of the collision. Section 31-33-7 governs proof of consent to operate a motor vehicle. It provides as follows:

> "In all civil proceedings, evidence that at the time of the accident or collision the motor vehicle was registered in the name of the defendant, shall be prima facie evidence that it was being operated with the consent of the defendant, and the absence of consent shall be an affirmative defense to be set up in the answer and proved by the defendant." Section 31-33-7 (emphasis added).

We have noted that the General Assembly, in enacting this statute, acknowledged that there is "greater justice * * * [in] placing the burden of proof of consent upon the owner of a motor vehicle * * *." Kent v. Draper Soap Co., 75 R.I. 30, 35, 63 A.2d 571, 574 (1949).

This Court has previously been crystal clear regarding the effect that the just-cited statute has in the summary judgment context. In Kent, decided more than six decades ago, we announced that "rarely under [§ 31-33-7] can it be ruled as a matter of law that an affirmative defense has been made out or that a prima facie case under the statute has been overcome." Kent, 75 R.I. at 37, 63 A.2d at 575. We further stated that, in cases where § 31-33-7 is in issue, evidence of vehicle registration "cannot be treated as a mere presumption;" instead, this "prima facie evidence remains in the case throughout the trial and is entitled to be weighed like any other evidence upon the question of fact as to consent." Kent, 75 R.I. 36–37, 63 A.2d at 575. Accordingly, sworn statements that a driver involved in a collision "did not have permission to use [the defendant-owner's] automobile * * * are relevant to [the defendant-owner's] attempt to establish [an] affirmative defense under § 31-33-7, but they are not sufficient to prove that defense at the summary judgment stage." Andreoni v. Ainsworth, 898 A.2d 1240, 1244 (R.I. 2006) (emphasis added).

We have recognized that only a "rare and exceptional case" would take the issue of consent out of the hands of a jury and "prove as a matter of law the [affirmative] defense" under § 31-33-7.[2] See Hill v. Cabral, 62 R.I. 11, 19, 2 A.2d 482, 485 (1938). There is, however,

---

[2]     This Court has referenced an example of a "rare and exceptional case" when, in dictum, it stated that "[a] situation in which a car rental agency expressly limits who is allowed to drive its vehicle * * * may be the rare and exceptional case that proves the affirmative defense of lack of consent as a matter of law." Andreoni v. Ainsworth, 898 A.2d 1240, 1243 n.7 (R.I. 2006) (discussing LaFratta v. Rhode Island Public Transit Authority, 751 A.2d 1281 (R.I. 2000)). In such a case, summary judgment in favor of a rental agency-defendant would be appropriate because, absent some ambiguity or amendment to the original rental agreement, the plain

nothing "rare and exceptional" about Ms. Stevens's case. See id. In moving for summary judgment, she pointed to two pieces of evidence—her Affidavit and the Stolen Vehicle Report—to support her position that the unidentified driver did not have her consent to drive the Camry on the day of the collision.

As an initial matter, the Affidavit is insufficient for Ms. Stevens to prevail on summary judgment. We addressed this very issue in Andreoni, 898 A.2d at 1241; in that case, a vehicle owner was named as a defendant in a lawsuit after her car was involved in a collision. She provided "deposition testimony and a sworn affidavit" in support of her argument that the person driving her car at the time of the accident did not have her consent. Id. The motion justice granted summary judgment in favor of the defendant-owner based on the absence of consent. Id. On appeal, this Court reversed the grant of summary judgment, holding that when a motion justice is presented with (1) prima facie evidence of consent pursuant to the express terms of § 31-33-7 and (2) sworn statements maintaining that the owner did not give consent to the driver involved in the accident, such conflicting evidence as to the issue of consent creates an issue of fact for a jury to decide. Andreoni, 898 A.2d at 1244; see also Avedesian v. Butler Auto Sales, Inc., 93 R.I. 4, 13, 170 A.2d 604, 608 (1961) (recognizing that this Court has "held * * * that evidence that [a] vehicle was registered in [a] defendant's name was enough to take the question of consent to the jury").

Ms. Stevens's Affidavit does not resolve the issue of consent in this case. It is undisputed that Ms. Stevens was the registered owner of the Camry at the time of the collision; as expressly provided for in § 31-33-7, that fact alone serves as prima facie evidence that she gave consent to the unidentified driver. Her Affidavit, however, fails to overcome the prima facie evidence

language of the contract would limit the rental agency's consent to drivers named in the agreement. See id.

created by statute. Looking at the competing evidence together, there is unquestionably an unresolved material issue of fact in this case. To allow the motion justice to grant summary judgment based on the Affidavit alone would ignore the General Assembly's decision to make ownership "prima facie evidence" of consent. See § 31-33-7; see also Kent, 75 R.I. at 37, 63 A.2d at 575 (noting that rarely under § 31-33-7 can the affirmative defense be proven as a matter of law—"especially * * * when the proof rests upon oral testimony introduced by the party upon whom the burden rests and upon inferences from the surrounding circumstances").

Ms. Stevens sought to bolster her argument by referencing the Stolen Vehicle Report. That document, however, does not transform this matter into a "rare and exceptional case" that would entitle Ms. Stevens to summary judgment. See Hill, 62 R.I. at 19, 2 A.2d at 485. Rather, when viewed in the context of the remaining evidence presented to the motion justice (including the prima facie evidence), the Stolen Vehicle Report only highlights the need for a fact-finder to weigh the evidence and make credibility determinations. For instance, the Stolen Vehicle Report indicates that the Camry was stolen on Thursday, October 18, 2007 "off of Bay [Street]," where Ms. Stevens testified that she had gone fishing with her daughter. The Incident Report, however, states that Ms. Stevens "LEFT [the Camry] AT A FRIENDS [sic] HOME WHEN SHE LEFT [for Florida] LAST FRIDAY 10/19"—a position that Ms. Stevens reiterated in arguing for summary judgment. Next, Ms. Stevens wrote in the Stolen Vehicle Report that the Camry had been missing since 10 a.m. on October 18. This is inconsistent with her deposition, in which she testified that she took the Camry to go fishing with her daughter at 4:30 p.m. on that same day.

Ms. Stevens argues that, as a matter of law, the unidentified driver did not have her consent to drive her Camry on the day of the collision. Yet, as the above-summarized evidence so amply demonstrates, the record is replete with unanswered questions with respect to the

- 10 -

consent issue. We do not mention those inconsistencies for the purpose of accusing Ms. Stevens of mendacity. The point is that, at the summary judgment stage, such determinations should not be made in the face of competing evidence. See Estate of Giuliano, 949 A.2d at 394. In our opinion, the motion justice erred in choosing to believe two pieces of evidence (the Affidavit and portions of the Stolen Vehicle Report) while overlooking the statute-based prima facie evidence and relevant factual discrepancies. See Kent, 75 R.I. at 37, 63 A.2d at 575 ("Except in some rare and unusual circumstances, the credibility of the witnesses and the weight of the evidence are in the first instance for the consideration of the trier of the facts.").

Summary judgment is a "drastic step" that should "only [be granted] if the case is legally dead on arrival." See Mitchell v. Mitchell, 756 A.2d 179, 185 (R.I. 2000). This case is very much alive. A jury must decide its fate.

## V

## Conclusion

For the reasons set forth in this opinion, we reverse the Superior Court's grant of summary judgment in favor of Ms. Stevens. The record in this case may be remanded to the Superior Court.



**RHODE ISLAND SUPREME COURT CLERK'S OFFICE**

*Clerk's Office Order/Opinion Cover Sheet*

**TITLE OF CASE:**        Argelis Pichardo v. Julie Stevens et al.

**CASE NO:**        No. 2011-243-Appeal.
(PC 10-54)

**COURT:**        Supreme Court

**DATE OPINION FILED:**   November 27, 2012

**JUSTICES:**        Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia JJ.

**WRITTEN BY:**        Associate Justice William P. Robinson III

**SOURCE OF APPEAL:**   Providence County Superior Court

**JUDGE FROM LOWER COURT**:

Associate Justice Sarah Taft-Carter

**ATTORNEYS ON APPEAL:**

For Plaintiff:  Desiree M. Santilli, Esq.

For Defendant:  David O. Brink, Esq.