Roland DeMaio et al.                    :

v.                                      :

Raymond A. Ciccone et al.               :

NOTICE:    This opinion is subject to formal revision before publication in the Rhode Island Reporter.  Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone 222-3258 of any typographical or other formal errors in order that corrections may be made before the opinion is published.

Roland DeMaio et al.          :

v.          :

Raymond A. Ciccone et al.          :

Present: Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

**O P I N I O N**

**Justice Robinson, for the Court.** The plaintiffs Roland DeMaio and Linda DeMaio appeal from the entry of summary judgment in favor of the defendants Raymond A. Ciccone and Cheryl A. Breggia.

This case came before the Supreme Court for oral argument pursuant to an order directing the parties to show cause why the issues raised in this appeal should not be summarily decided. After considering the record, the memoranda submitted to this Court on behalf of the parties, and the oral arguments of counsel, we are of the opinion that cause has not been shown and that the appeal may be resolved without further briefing or argument. For the reasons set forth in this opinion, we reverse the Superior Court's grant of summary judgment and vacate the entry of final judgment.

# I

## Facts and Travel

It is undisputed that, on October 18, 2006, a motor vehicle collision involving Mr. DeMaio and Mr. Ciccone occurred on Hartford Avenue in Johnston. At the time of the collision, Mr. DeMaio was riding his motorcycle and Mr. Ciccone was driving a 1995 Volkswagen Jetta that belonged to his girlfriend, co-defendant Cheryl Breggia. On June 18, 2007, Mr. DeMaio and his wife, Linda,[1] filed a complaint naming Mr. Ciccone and Ms. Breggia[2] as defendants. The complaint alleged that Mr. Ciccone had been negligently operating the Jetta at the time of the collision.

The defendants filed a motion for summary judgment on June 25, 2010. In their accompanying memorandum of law, defendants contended that the evidence "established that the plaintiff's motorcycle struck the rear of the defendants' motor vehicle." Under Rhode Island law, "[w]hen a case includes a claim or defense resulting from a rear-end collision between vehicles, a prima facie case of negligence against the driver of the car in the rear is established * * *." Maglioli v. J.P. Noonan Transportation, Inc., 869 A.2d 71, 75 (R.I. 2005). The defendants argued that the court should grant summary judgment in their favor because Mr. DeMaio was unable to rebut the prima facie evidence of his own negligence, which prima facie evidence arose from the fact of the rear-end collision.

---

[1] It appears that Linda DeMaio's claims are for loss of consortium resulting from the injuries suffered by her husband. See, e.g., Olshansky v. Rehrig International, 872 A.2d 282, 291 (R.I. 2005).

[2] Cheryl Breggia was not in her Jetta at the time of the accident. However, under Rhode Island law, the owner of a vehicle may be liable for the acts of another person who operates the owner's car "with the consent of the owner." G.L. 1956 § 31-33-6; see generally Pichardo v. Stevens, 55 A.3d 762 (R.I. 2012).

None of the parties identified any witnesses to the collision; accordingly, the motion justice was presented with the conflicting stories of the two motor vehicle operators along with the deposition testimony of Sgt. Christopher Correia (the investigating officer) as well as a police report concerning the collision and police photographs of the scene. At the conclusion of a hearing on November 9, 2010, the motion justice granted defendants' motion for summary judgment, stating that Mr. DeMaio had "struck * * * the Ciccone vehicle from the rear." The motion justice further stated that, "to rebut the presumption that he was negligent, Mr. DeMaio needs more than just some speculation" regarding Mr. Ciccone's negligence. We shall next proceed to outline in greater detail the evidence presented to the motion justice.

**A**

**Mr. DeMaio's Version of the Events**

This section of the opinion sets forth pertinent details regarding the night of the collision as provided by Mr. DeMaio in his deposition testimony and in his answers to interrogatories.

Mr. DeMaio testified that he had been "driving bikes for 35 years"[3] and had been involved in only one accident prior to the collision in October of 2006; he thought that the earlier accident had occurred "in the Seventies." Mr. DeMaio stated that, whenever he rode his motorcycle, "especially at nighttime, [he was] always glancing around."

Mr. DeMaio further testified that, at approximately 8 p.m. on the night of the collision, he was on his motorcycle heading East on Hartford Avenue. He stated that he was traveling "30, 35 miles an hour" down a straight section of the road with his lights on. He recalled that there was no traffic in the area, and he added that he would have been "looking in the mirrors and checking

---

[3] The word "bike" can properly be used to refer to a motorcycle as well as a bicycle and a motorbike. See The American Heritage Dictionary of the English Language 179 (5th ed. 2011). It is clear from the context of his deposition testimony that, when Mr. DeMaio stated that he had been "driving bikes for 35 years," he was referring to his use of motorcycles.

everything" so as to survey the road. When asked at his deposition what was "the last thing that [he] remember[ed] before the accident," Mr. DeMaio replied:

> "No one near me, I'm coming down Route 6 going maybe 35 miles an hour, that's the last thing I remember. So I don't know where Mr. Ciccone came out from. I'd like to know, but I have no idea. He said that supposedly, my wife told me, that he came out, I followed him and banged into him. I would have remembered that. I've been driving bikes for 35 years, I definitely would have remembered that."

Mr. DeMaio testified that his first memory after losing consciousness consisted of "waking up in the rescue" briefly; his next memory was of waking up again at the Trauma Center in Rhode Island Hospital, where "a young doctor * * * was sewing [his] ear."

Regarding the damage to his motorcycle, Mr. DeMaio stated that "the heavier damage was all on the right-hand side," noting that "[e]verything was crushed in, the crash bar, the tank, the chrome, the peg was bent up, the foot pegs, and * * * the right front fender was damaged." Mr. DeMaio further testified that the man who removed the motorcycle from the scene of the collision "said that it looked like the impact was on the right-hand side" of the motorcycle.

**B**

**Mr. Ciccone's Version of the Events**

At his deposition, Mr. Ciccone painted a different picture of the events on the night of the collision. He testified that he had been at Ms. Breggia's home and then, "right around supper," he took her car to go to the store. He stated that, while on his way there, he came to the intersection of Harding Avenue and Hartford Avenue. He said that, at that time, he stopped for about five seconds and saw a motorcycle heading East on Hartford Avenue towards the intersection. Mr. Ciccone testified that the motorcycle was the only vehicle that he saw on Hartford Avenue at that time.

Mr. Ciccone testified that he then turned East onto Hartford Avenue so that Mr. DeMaio's motorcycle was "over 200 yards, and maybe more" behind him and traveling in the same direction. He estimated that he traveled for about thirty seconds before he reached the entrance to the convenience store that was his destination. Mr. Ciccone stated that he then "[came] to a complete stop * * * [on Hartford Avenue] because there's usually cars at the convenience store, so you [have] to take a look before you turn in." He testified that, after stopping, he started to turn right so that the Jetta was "slightly" at an angle, with the nose of the car in the parking lot. Mr. Ciccone maintained that, at that moment, Mr. DeMaio's motorcycle struck the Jetta from behind.

Regarding the resulting damage to the Jetta, Mr. Ciccone testified as follows:

> "The back left-hand side was hit, and I guess the bike kind of wrapped a little bit and the back left rear on the side was hit—not hit, it was like scraped on the side, but in the back was the—where the impact was. On the side it was pushed a little bit in and scraped on the back left rear, back left side was scraped too."

## C

### Sergeant Correia's Deposition and the Police Report

Christopher Correia, a sergeant in the Johnston Police Department who responded to the collision, was also deposed in connection with this case. Sergeant Correia testified that he carried out an investigation of the collision on the night of the incident. Sergeant Correia stated that neither he nor any of the other responding officers were certified accident reconstructionists. Unlike a "full accident reconstruction," Sgt. Correia testified that the type of investigation he performed would have been based on the "position of the vehicles or vehicle, the operators, what they may have to say, location of damage on the vehicles that could indicate position or where they were traveling from, any time from operators, independent witnesses, those kind[s] of things to try to simulate that and put it all together."

Sergeant Correia did not interview Mr. DeMaio on the night of the collision because, before an emergency vehicle came to take Mr. DeMaio to the hospital, he "was down and not in condition to speak to." Sergeant Correia added that he did not want to "push" Mr. DeMaio due to the fact that he had "head injuries and [was] bleeding in the middle of the roadway." However, Sgt. Correia testified that he did interview Mr. Ciccone, who told him that "he was struck in the rear by the motorcycle."

After referring to his police report during his deposition, Sgt. Correia testified that "[i]t appears that the motorcycle was also traveling eastbound behind the vehicle, wasn't able to stop and—based on the damage being at that driver's back corner of the vehicle, tried to swerve around and possibly caught the rear corner of the vehicle." He testified that "on the right side of the [motorcycle] there was red paint transfer across the gas tank as well as the front suspension forks." Sergeant Correia also identified photographs that were taken at the scene of the accident by a fellow police officer.

The deposition of Sgt. Correia included the following exchange between Mr. DeMaio's attorney and the police officer:

> Q: "Based on your years of investigating accidents, if Mr. Ciccone had turned out of that side street in front of [Mr. DeMaio's] bike, would the damage have been to the same parts of his bike and Mr. Ciccone's vehicle?"
>
> A: "It depends. It depends on the angle of when he pulled out at the time. It's possible that it could have been in the same spot, it's possible that it could have been in a different spot."

## D

## The Photographs

As part of their objection to defendants' motion for summary judgment, plaintiffs presented to the motion justice several photographs taken by the police on the night of the collision, including the photograph that is attached as Appendix A to this decision.

## II

## Issue on Appeal

On appeal, Mr. and Mrs. DeMaio contend that they presented evidence tending to show that Mr. Ciccone was negligent and that there are genuine issues of material fact as to whether the October 18, 2006 incident was in actuality a rear-end collision. The plaintiffs therefore argue that summary judgment was improperly granted in defendants' favor.

## III

## Standard of Review

This Court reviews the granting of a motion for summary judgment in a de novo manner. Jessup & Conroy, P.C. v. Seguin, 46 A.3d 835, 838 (R.I. 2012). We apply the same standards used by the motion justice. Papudesu v. Medical Malpractice Joint Underwriting Association of Rhode Island, 18 A.3d 495, 497 (R.I. 2011). We will affirm the grant of summary judgment only "[i]f we conclude, after viewing the evidence in the light most favorable to the nonmoving party, that there is no genuine issue of material fact to be decided and that the moving party is entitled to judgment as a matter of law * * *." Pereira v. Fitzgerald, 21 A.3d 369, 372 (R.I. 2011) (internal quotation marks omitted).

We are ever mindful that "[s]ummary judgment is a drastic remedy, and a motion for summary judgment should be dealt with cautiously." Estate of Giuliano v. Giuliano, 949 A.2d

386, 390 (R.I. 2008) (internal quotation marks omitted).  The motion justice "must refrain from weighing the evidence or passing upon issues of credibility."  Doe v. Gelineau, 732 A.2d 43, 48 (R.I. 1999).  Ultimately, the "purpose of the summary judgment procedure is issue finding, not issue determination."  Estate of Giuliano, 949 A.2d at 391 (internal quotation marks omitted).

It should also be borne in mind that this Court has recognized that "issues of negligence are ordinarily not susceptible of summary adjudication, but should be resolved by trial in the ordinary manner."  See Gliottone v. Ethier, 870 A.2d 1022, 1028 (R.I. 2005) (collecting cases) (internal quotation marks omitted); see also DeNardo v. Fairmount Foundries Cranston, Inc., 121 R.I. 440, 448, 399 A.2d 1229, 1234 (1979) ("In Rhode Island the general rule is that negligence is a question for the jury unless the facts warrant only one conclusion.").  The motion justice may treat the issue of negligence as a matter of law only if the "facts suggest only one reasonable inference."  See Kennedy v. Providence Hockey Club, Inc., 119 R.I. 70, 77, 376 A.2d 329, 333 (1977).

## IV

## Analysis

Applying the just-summarized principles to the facts of this case, it is our opinion that summary judgment should not have been granted.

It is true that this Court has long recognized that the fact of a rear-end collision constitutes "prima facie evidence of [the] negligence of the driver of the second vehicle."  See Barnes v. Quality Beef Co., 425 A.2d 531, 536 (R.I. 1981).  Mr. Ciccone contends that he was "rear-ended" by Mr. DeMaio's motorcycle; on that basis, he argues that the evidence points to but one conclusion—viz., that the plaintiff driver (Mr. DeMaio) was the only negligent party and that, therefore, the defendant driver (Mr. Ciccone) cannot be liable.  We disagree.  In order to be

able to benefit from the prima facie evidence, the party seeking to employ that evidentiary principle must first establish that the motor vehicle collision was, in fact, a rear-end collision. See Rachiele v. McGovern, 107 R.I. 241, 245, 266 A.2d 36, 38 (1970) (noting that the prima facie evidence principle applies "where a rear-end collision is established" (emphasis added)). Moreover, since the motion justice decided the issue of whether there was a rear-end collision in the context of a summary judgment motion, he was required to make that determination while "viewing the facts and all reasonable inferences therefrom in the light most favorable to" plaintiffs. Delta Airlines, Inc. v. Neary, 785 A.2d 1123, 1126 (R.I. 2001).

The defendants certainly produced some evidence tending to show that the accident was a rear-end collision: Mr. Ciccone testified that the motorcycle struck the "back left rear" of the Jetta; and the police report that was presented to the motion justice states that the car "sustained damage to the rear, rear tail light, and rear driver's fender," and it further notes that such damage was "consistent with [Mr. Ciccone's] statement that he was rear ended." In addition, Sgt. Correia testified that, based on his investigation on the night of the collision, it "appear[ed] * * * [that Mr. DeMaio] tried to swerve around and possibly caught the rear corner of the vehicle."

Notably and critical to our decision, however, plaintiffs presented conflicting evidence which, if believed, would certainly create a genuine issue of material fact as to whether the accident was in actuality a rear-end collision. Mr. DeMaio testified that, before the collision took place, he had been riding his motorcycle on a straight section of road without any vehicles in front of him. That testimony stands in stark contrast with the testimony of Mr. Ciccone, who presented a version of the events where Mr. DeMaio would have been riding behind the Jetta before the collision on Hartford Avenue; in fact, if Mr. Ciccone's version is correct, the rear-end

of the Jetta would have been directly in Mr. DeMaio's line of sight for thirty seconds before the impact.

For the motion justice to conclude that Mr. DeMaio rear-ended the Jetta, he would have had to either disregard Mr. DeMaio's testimony or deem it not worthy of belief. However, summary judgment is not the moment for the court to make credibility assessments—a function that should be reserved for the fact-finder at trial. Gelineau, 732 A.2d at 48; see also Pichardo v. Stevens, 55 A.3d 762, 766 (R.I. 2012); Estate of Giuliano, 949 A.2d at 394 n.9.

It should also be noted that plaintiffs, as the nonmoving parties, directed the motion justice's attention to the photographs of the vehicle that were taken after the collision on Hartford Avenue. Although those photographs depict damage to the rear left fender and rear left taillight of the Jetta, they also reveal considerable damage to the left side of the car. Significantly, the only indentations appear to be on that side of the vehicle. Further, while the police report indicates that the damage may have been consistent with a rear-end collision, there are other reasonable conclusions that a jury could reach given the facts presented to the motion justice; in fact, Sgt. Correia admitted in his deposition testimony that the damage to the motorcycle and the Jetta could also be consistent with Mr. Ciccone's having hit the motorcycle while pulling out onto Hartford Avenue. Given such conflicting evidence, the motion justice should not have granted summary judgment based on his conclusion that the accident was a rear-end collision.

In our view, not only does this evidence call into question whether the accident was a rear-end collision, but it also creates a genuine issue of material fact regarding which operator was negligent. This Court addressed a similar situation in Gliottone. In that case, the plaintiff brought a negligence action after his car was involved in a collision with the defendant's vehicle.

See Gliottone, 870 A.2d at 1023. The plaintiff was traveling northbound when he began a left-hand turn into a service station; at that point, the defendant's car (traveling southbound) collided with the plaintiff's vehicle. See id. The plaintiff had no recollection of the collision other than having seen a "white blur" just before his head hit the windshield. See id. The plaintiff testified that he never saw the defendant's vehicle, nor could he remember whether he was braking or accelerating at the time of the crash. Id. at 1024. Only one eyewitness was deposed; she testified (1) that the plaintiff did not use his directional signal, (2) that the defendant was traveling between twenty-five and twenty-eight miles per hour at the time of the collision, and (3) that the "plaintiff crossed into oncoming traffic so suddenly that defendant could not have avoided the accident." Id. The evidence also included photographs of the damage to the vehicles. Id.

The defendant in the Gliottone case filed a motion for summary judgment, arguing that the "plaintiff had failed during discovery to raise evidence sufficient to create a genuine issue of material fact about whether [the] defendant's negligence had caused the collision." Gliottone, 870 A.2d at 1024. The hearing justice granted summary judgment in the defendant's favor, but this Court reversed the decision on appeal. See id. at 1029. We stated that, "[a]lthough the evidence of plaintiff's negligence * * * [was] very strong * * * the photographs illustrate such significant and severe front-end damage to [the plaintiff's] vehicle that a jury reasonably could infer that [the] defendant may have been speeding at the time of the accident." Id. at 1028.

Similarly, with respect to the case at bar, the photographs from the scene of the collision on Hartford Avenue reveal enough damage to the side of the Jetta that a jury reasonably could infer that Mr. DeMaio's motorcycle struck the side of the Jetta after Mr. Ciccone had negligently pulled out in front of the motorcycle. While Sgt. Correia's report notes that the damage was

consistent with a rear-end collision, that report was composed without the benefit of Mr. DeMaio's statements concerning his perception of what transpired on the night of October 18, 2006. Mr. Ciccone asserts that he was struck from behind, but the photographs show indentations on the side of the Jetta; and Sgt. Correia testified that it is possible that this damage could have been caused by Mr. Ciccone's having pulled out in front of Mr. DeMaio's motorcycle. That scenario would also be consistent with Mr. DeMaio's testimony that, before he lost consciousness, he had been traveling at a moderate speed down a straight road without anyone in front of him.

Both scenarios are factually plausible. Accordingly, the summary judgment inquiry is at an end: "when the facts support plausible but conflicting inferences on a pivotal issue in the case, the judge may not choose between those inferences at the summary judgment stage." See Coyne v. Taber Partners I, 53 F.3d 454, 460 (1st Cir. 1995); see also Estate of Giuliano, 949 A.2d at 394 n.9 ("The weight of the evidence should not be evaluated at the summary judgment stage."). It is our opinion that there is sufficient conflicting evidence on the issue of negligence for this case to be submitted to a fact-finder. See Holley v. Argonaut Holdings, Inc., 968 A.2d 271, 274 (R.I. 2009) ("It is well settled that issues of negligence are ordinarily not susceptible of summary adjudication, but should be resolved by trial in the ordinary manner." (internal quotation marks omitted)).

## V

### Conclusion

For the reasons set forth in this opinion, we reverse the Superior Court's grant of summary judgment in favor of the defendants and vacate the entry of final judgment. The record in this case may be remanded to the Superior Court.

## APPENDIX A





**TITLE OF CASE:**     Roland DeMaio et al v. Raymond A. Ciccone et al.

**CASE NO:**     No. 2011-211-Appeal.
(PC 07-3147)

**COURT:**     Supreme Court

**DATE OPINION FILED:**     February 1, 2013

**JUSTICES:**     Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia JJ.

**WRITTEN BY:**     Associate Justice William P. Robinson III

**SOURCE OF APPEAL:**     Providence County Superior Court

**JUDGE FROM LOWER COURT**:

Associate Justice Stephen J. Fortunato, Jr.

**ATTORNEYS ON APPEAL:**

For Plaintiffs:  Ruth DiMeglio, Esq.

For Defendants:  Kathleen Wyllie, Esq.